COWDEN MFG. CO. v. UNITED STATES.

No. 44307.

Court of Claims.

April 1, 1940.

142

Phil D. Morelock, of Kansas City, Mo. (George P. Lamb, of Washington, D. C., on the brief), for plaintiff.

'Guy Patten, of Washington, D. C., and Samuel O. Clark, Jr., Asst. Atty. Gen. (Robert N. Anderson and Fred K. Dyar, both of Washington, D. C., on the brief), for defendant.

Before WHALEY, Chief Justice, and WHITAKER, LITTLETON, and GREEN, Judges.

WHITAKER, Judge.

The plaintiff entered into a contract with the defendant on June 24, 1933, to furnish a certain number of suits of a certain type for a specified price. The contract entered into contained the following provision, known as the "Federal Taxes" provision:

"Prices set forth herein include any Federal Tax heretofore imposed by the Congress which is applicable to the material purchased under this contract. If any sales tax, processing tax, adjustment charge, or other taxes or charges are imposed or

changed by the Congress after the date set for the opening of the bid upon which this contract is based and made applicable directly upon the production, manufacture, or sale of the supplies covered by this contract and are paid by the contractor on the articles or supplies herein contracted for, then the prices named in this contract will be increased or decreased accordingly and any amount due the contractor as a result of such change will be charged to the government and entered on vouchers (or invoices) as separate items."

In order to carry out its contract the plaintiff purchased cotton cloth and cotton thread at a certain price, plus the amount of any taxes levied by the Industrial Recovery Act, 48 Stat. 195, the Agricultural Adjustment Act, and others. After the purchase of the cloth and thread the vendors thereof paid processing taxes thereon in the total amount of $4,469.98, for which amount they were reimbursed by the plaintiff. The plaintiff then made demand on the defendant for an additional payment to it of this amount under the "Federal Taxes" provision of its contract. The claim was denied and this suit was brought.

The defendant defends on the ground that the Agricultural Adjustment Act was passed prior to the date of plaintiff's contract and, therefore, under the "Federal Taxes" provision of the contract plaintiff is not entitled to any additional payment on account of the taxes levied by that Act. That provision recites that the prices set forth therein include any Federal tax "heretofore imposed by the Congress," but the defendant agreed to pay an additional sum to the contractor in case any processing tax, among others, is "imposed or changed by the Congress *after* the date set for the opening of the bid upon which this contract is based." (Italics ours.)

While the Agricultural Adjustment Act was passed prior to the date of the contract, it did not definitely provide for any tax on the processing of cotton, nor did it specify the amount thereof, if one should be imposed, nor when it should become effective. Its provisions with respect to a processing tax on cotton are as follows:

In section 2(1) Congress declared that it was its purpose in passing the Act, among others, "To establish and maintain such balance between the production and consumption of agricultural commodities, and such marketing conditions therefor, as will reestablish prices to farmers at a level that will give agricultural commodities a purchasing power with respect to articles that farmers buy, equivalent to the purchasing power of agricultural commodities in the base period."

In section 8 the Secretary of Agriculture is given power, in order to effectuate the declared policy, to provide, among other things, for reduction in the acreage of any basic agricultural commodity, and "to provide for rental or benefit payments in connection therewith * * * in such amounts as the Secretary deems fair and reasonable."

In section 9(a) it is provided: "When the Secretary of Agriculture determines that rental or benefit payments are to be made with respect to any basic agricultural commodity, he shall proclaim such determination, and a processing tax shall be in effect with respect to such commodity from the beginning of the marketing year therefor next following the date of such proclamation. * * * The rate of tax shall conform to the requirements of subsection (b)."

In subsection (b) it is provided: "The processing tax shall be at such rate as equals the difference between the current average farm price for the commodity and the fair exchange value of the commodity; * * *." unless the Secretary concludes that the tax at such rate would cause an accumulation of surplus stocks or a depression of the farm price of the commodity, in which event it is provided that "the processing tax shall be at such rate as will prevent such accumulation of surplus stocks and depression of the farm price of the commodity."

From the foregoing quotations from the Act it is obvious that with respect to cotton, for instance, it was unknown after the passage of the Act whether or not there would be any processing tax with respect thereto. Whether or not there should be was dependent upon the future action of the Secretary of Agriculture. No processing tax on cotton became effective until the Secretary had determined that rental or benefit payments should be made with respect thereto. Whether or not he would ever make such determination was unknown, although it might reasonably have been anticipated. But even so, it was impossible to determine from the Act when the tax should become effective, since it would not become effective until the beginning of the marketing year after such de--

144

termination of the Secretary. The plaintiff, therefore, did not know when it entered into its contract whether or not it would have to pay any processing taxes.

Nor could the rate of the tax be determined from the Act. The Act authorized the Secretary of Agriculture to determine the rate at such amount as would equalize the current average farm price of the commodity and the fair exchange value of the commodity. The plaintiff manifestly was unable to tell therefrom what rate the Secretary would fix. Moreover, the Secretary was not bound by this formula if he believed that its application would result in an accumulation of surplus stocks of the commodity or in the depression of its price. In this event he was authorized to fix a different rate, one that would prevent such accumulation of stocks or depression of price.

Even after the rate had been fixed by the Secretary, he had the right under the Act to vary it from time to time if he found this necessary in order to effectuate the declared purpose of Congress in passing the Act.

It is manifest, therefore, that it was impossible for either the plaintiff or its vendors to have determined the amount of the tax which it would be necessary to pay.

Under such circumstances we cannot say that these taxes had been "imposed" prior to the date of plaintiff's contract with the defendant, within the meaning in which that word was used in the contract. Authority had been conferred by Congress for the imposition of the tax, but that authority had not been exercised until thereafter, to-wit, on July 14, 1933. The purpose of the Federal Taxes provision of the contract was to reimburse the contractor for its additional costs brought about by the defendant's act in levying additional taxes. The taxes were not in effect when the contract was made and it was impossible for the contractor to ascertain when they would go into effect or the amount of them when they did. Therefore it could not figure what to include in its costs on account of them.

We are, therefore, of opinion that the processing taxes paid by the plaintiff were taxes "imposed or changed by the Congress after the date set for the opening of the bid upon which this contract is based." The action of Congress in imposing the tax was not complete until action by its delegate, the Secretary of Agriculture, and this was after the contract was made.

All other questions raised by the defendant have been disposed of by our decisions in Batavia Mills, Inc., v. The United States, 85 Ct.Cl. 447, and Telescope Folding Furniture Company, Inc., v. The United States, Ct.Cl., 31 F.Supp. 780, decided March 4, 1940.

It results that plaintiff is entitled to recover of the defendant the sum of $4,469.-98. It is so ordered.

WILLIAMS, J., took no part in the decision of this case.