## FEDERAL EXPORT CORPORATION v. UNITED STATES.
### No. H–106.

Court of Claims.

Nov. 14, 1938.

As Corrected on Denial of New Trial
Mar. 6, 1939.

Henry M. Ward, of Washington, D.C. (Brewster & Steiwer, of Washington, D.C., on the brief), for plaintiff.

George H. Foster, of Washington, D.C., and James W. Morris, Asst. Atty. Gen. (Fred K. Dyar, of Washington, D.C., on the brief), for the United States.

Before BOOTH, Chief Justice, and GREEN, LITTLETON, WILLIAMS, and WHALEY, Judges.

GREEN, Judge.

This is a suit to recover taxes alleged to have been overpaid for the year 1918, together with interest, aggregating about a million dollars. The plaintiff is what is commonly referred to as the parent company of six affiliates.

It appears that plaintiff on June 15, 1919, filed on behalf of itself and its affiliates a return for the year 1918 showing a tax of $1,486,145.12 and that payment was made of $1,141,695.49. In November, 1919, plaintiff filed a claim for abatement (requesting a special assessment) and on July 14, 1920, a claim for refund on the ground that a net loss had been sustained for the year 1919 which should be deducted from the 1918 consolidated return. As a result of this claim, the Commissioner of Internal Revenue audited the tax of the group and determined that $578,137.46 was the tax for the group to be paid by the plaintiff. A certificate of overassessment was issued, the unpaid portion of the original assessment abated, and $618,487.76 refunded.

Subsequently the Commissioner made a reaudit of the income of the group and issued a further certificate of overassessment for $5,438.01, and otherwise denied the claim for refund. In determining the tax at this time, the Commissioner computed the 1918 consolidated income and the 1919 consolidated loss and, after deducting the group loss from the group income, calculated the tax accordingly. In determining the amount of the 1919 loss which should be used as a deduction from the 1918 income, the Commissioner excluded a loss of about $80,000 from the sale of Liberty bonds as not deductible. A further claim for refund having been filed and denied, this suit was brought on March 15, 1927. Thereafter, the Commissioner at plaintiff's request gave further consideration to the question of the loss on the Liberty bonds and the correct 1918 taxable income. It was determined that additional depreciation should be al-

lowed for both 1918 and 1919 for one of the affiliates and that the 1919 loss from the sale of Liberty bonds should be deducted from the 1918 income. A recomputation of the tax was then made which indicated an overpayment of $180,594.39. Later, a stipulation was filed in the case indicating that all issues were settled except the question of amortization of facilities of the Sligo Iron & Steel Company, one of the affiliated companies, which question was left open to trial. After the stipulation was filed, this court decided the case of Swift & Company v. United States, 38 F.2d 365, 69 Ct.Cl. 171. Subsequently, the defendant, considering that there had been an error made in the computation causing the loss on the Liberty bonds to be in effect deducted twice and also that the computation of plaintiff's tax was in error because it was not in accordance with the method laid down by this court in the Swift Case, filed a motion for leave to withdraw from paragraph 10 of the stipulation. This motion was sustained by the court with leave "given to either party to offer and have heard such evidence as it may see fit to produce, showing or tending to show the correct net income and invested capital of the plaintiff and its affiliated corporations for the calendar years 1918 and 1919".

After this suit was begun a recomputation was made of the consolidated net income of plaintiff for 1918 in accordance with the principles outlined in Swift & Company v. U. S., supra. Taking the amounts of income and losses used by the Commissioner as a basis for the computation and allowing 1919 losses against 1918 income only in accordance with the court's decision in the Swift Case, it was found that instead of an overassessment as previously determined a very large amount would be due from the plaintiff. As the collection of this sum would in any event be barred, reference to it is made only for the purpose of explaining the situation under which the plaintiff brings this suit.

 The first question to be determined is whether this court had a right to set aside the stipulation. It is contended by plaintiff that the rule is that a mistake of law will not justify the setting aside of a stipulation. Without determining whether this is the rule in other courts and in cases where the Government is not the defendant, it is not an invariable rule in this court. We think the court has power to prevent an injustice being done the Government when a stipulation has been inadvertently entered into by one of its attorneys even though the stipulation involves a matter of law. This court in the early case of Giddings v. United States, 29 Ct.Cl. 12, 15, held that where a case was submitted on stipulation either party should be allowed to withdraw it at any time before a decision is announced and in the case of Jones and Laughlins v. United States, 42 Ct.Cl. 178, it was held in substance that this court had the authority to set aside a stipulation involving a mistake of law in order to protect the Government and that when a claimant seeks to avail himself of a stipulation in writing signed by a representative of the Government he takes it subject to a motion of defendant's counsel to set the agreement aside. The prior action of this court with reference to the stipulation filed in the instant case was authorized and is reaffirmed.

There is no substantial dispute as to the facts in the case. The plaintiff claims that under them there is an overassessment of $120,075.07 for which sum it is entitled to judgment. On the authority of Swift & Company v. United States, supra, the defendant insists that there is no overassessment and that plaintiff's petition should be dismissed. On the issue so raised the plaintiff contends—

(1) That the decision in the Swift & Company Case is erroneous and should be reversed;

(2) That even if the Swift & Company Case was correctly decided, when proper allocations are made, the plaintiff will be entitled to recover.

 The contention of the plaintiff that the decision of this court in the case of Swift & Company v. U. S., supra, was erroneous is based upon the theory that in computing the net income of a consolidated group of corporations the total of the losses of the separate corporations should be deducted from the total of the income of the several companies; or, as is stated in plaintiff's brief, group losses should be deducted from group income, and in accordance with this theory the plaintiff argues that the consolidated group is the taxpayer. To the contrary, we held in the Swift & Company Case that "the separate corporations are the taxpayers, and the affiliated group is merely a tax computing unit, not a taxable unit." 38 F.2d 374. Following this principle, the court held in effect and showed by examples that losses of one company

could be deducted only from the gains of that company and not from the consolidated income of the group regardless of the year for which the deduction was sought to be made. Indeed, we think it obvious that if the separate companies are held to be the taxpayers their income and losses must be determined separately in order to ascertain the basis for the amount of taxes to be paid by each.

The opinion in the Swift & Company Case was rendered in 1930. Since that time the rules laid down therein have been repeatedly affirmed by various courts and the Board of Tax Appeals and the only dissent was made in a case which was disapproved by the Supreme Court. It is quite true that in many or possibly all of these cases the facts were not precisely the same and the discussion in part referred to the year for which the deduction was sought to be taken. But this makes no difference with the principle involved.

In Woolford Realty Co. v. Rose, 286 U. S. 319, 328, 52 S.Ct. 568, 570, 76 L.Ed. 1128, it was said:

"The fact is not to be ignored that each of two or more corporations joining (under section 240) in a consolidated return is none the less a taxpayer. Commissioner v. Ginsburg Co. (C.C.A.) 54 F.2d 238, 239. By the express terms of the statute, section 240(b), the tax when computed is to be assessed, in the absence of agreement to the contrary, upon the respective affiliated corporations *on the basis of the net income properly assignable to each.* 'The term "taxpayer" means any person * * * subject to a tax imposed by this Act.' Revenue Act of 1921, § 2(9), 42 Stat. 227. A corporation does not cease to be such a person by affiliating with another." [Italics ours.]

The Supreme Court in the case last cited considered particularly the question as to the right of the Piedmont Company to deduct losses for a certain year, but it was said that its operations for that year having resulted in a loss there was nothing from which earlier losses could be deducted. It will be seen that this is in effect holding that losses, if deducted at all, must be deducted from the net income of the corporation sustaining the loss and where that company has no income for the particular year in question there can be no deduction. Such was the rule laid down in the Swift & Company Case, which was cited with other cases as authority for the

decision. Attention was called to the case of National Slag Co. v. Commissioner, 3 Cir., 47 F.2d 846, as favoring a different view, but this case was by implication disapproved. Among the cases approving the decision in the Swift & Company Case is Commissioner v. Ben Ginsburg Co., 2 Cir., 54 F.2d 238, where the court affirmed the doctrine that "since each corporation of the affiliated group is a taxpayer, the net loss of each must be computed separately"; also that "the right of deduction of a net loss computed under section 206 is restricted to the computation of the net income of the taxpayer * * * and the deduction must be confined to the computation of the net income of the corporate entity." [Page 239.]

No case submitted to this court was more carefully considered than the Swift & Company Case which we are now asked to reverse. Upon reconsideration, its reasoning meets with our entire approval and it is generally considered that its conclusions have become established and settled law. We have considered the committee reports on the bill and find nothing therein to the contrary of the construction we have given the statute. Accordingly, we decline to reverse the case and adhere to its principles.

As before stated, it is argued that even if the Swift & Company Case was correctly decided, when proper allocations of certain losses and income are made, the plaintiff will be entitled to recover. Stating more particularly the contentions of the plaintiff with reference to these matters, we find that they are as follows:

(1) That $2,488,441.69 of earnings of 1918 recorded on the books of the Cosmopolitan Shipping Company should be allocated to the Federal Export Corporation, the plaintiff, so as to increase plaintiff's income from $352,500.32 to $2,840,942.01;

(2) That advances by the Federal Export Corporation made in 1919 to the Commercial Iron & Steel Company and the Sligo Iron & Steel Company to meet their operating deficits should be considered losses of the Federal Export Corporation for 1919; and

(3) That certain advances made by the Cosmopolitan Shipping Company in 1919 to meet the operating deficit of the New Mexico Central Railway Company should be considered losses of the Cosmopolitan Shipping Company for 1919.

The facts that pertain to these matters are fully set forth in the findings and it is not necessary to again set them out in detail.

With reference to the first of these matters, the findings show that the Cosmopolitan Shipping Company, having a complete organization as a shipping company, had an agreement with plaintiff, as successor to the Federal Shipping Company, by which the charters of three boats for the carrying of cargoes between the United States and France were transferred to it and a commission was to be paid plaintiff of 5 per cent on the gross freight. The Cosmopolitan Shipping Company realized a net income in 1918 of $2,723,451.69 from the operation of the boats, which amount was included as a part of its income in the consolidated return filed for 1918, which was made up in accordance with the books of the two companies. The return also included a deduction taken by the Cosmopolitan Shipping Company of $680,887.42 paid to the plaintiff as a commission in accordance with the agreement of the parties. The commission was included by plaintiff in its income for 1918 and both items allowed as returned.

The plaintiff says that the same persons acted as officials for both companies and argues that the books are not conclusive as to the nature of the transactions. That is sometimes true but here the two corporations acted as separate entities, kept separate books, made agreements with each other, and we think that the books show the facts as they really were, in accordance with which the plaintiff made a return to the Government. The allocation of income asked by the plaintiff must be denied.

In the second of the changes in allocation asked by the plaintiff it appears that plaintiff claims to be entitled to have the amounts advanced to the Commercial Iron & Steel Company and the Sligo Iron & Steel Compay in 1919 charged as losses to it for that year. The stipulation of the parties made up from the books shows that in 1919 $470,887.55 was lost by the Sligo Iron & Steel Company and $4,322.02 by the Commercial Iron & Steel Company. As these two companies had been operating at a loss in 1918, under the decision of the Swift Case, their losses could not be taken as a deduction by the respective companies. Moreover these companies continued to exist after 1919 and there is nothing in the record from which a loss to the plaintiff in 1919 can be determined. On the contrary, so far as the evidence goes, it shows that these loans were not liquidated until later years. This change in allocation must be refused.

The third allocation contended for is to have the Cosmopolitan Shipping Company's net income for 1919 reduced by certain advances made to the New Mexico Central Railway Company in the amount of $201,984.35.

The evidence shows that the plaintiff and the Cosmopolitan Shipping Company advanced money to the railway company in 1919 and that the railway company was then being operated at a loss. The evidence shows that in 1926 or 1927 the stock of the New Mexico Company was sold to the A. T. & S. F. Ry. Co. but there is nothing in the record from which it can be determined when, if ever, it became evident that a loss was sustained by the Cosmopolitan Shipping Company and our conclusion is that a reallocation can not be made as asked by plaintiff.

In these matters plaintiff, long after the event and after its return had been made and audited and reaudited by the Commissioner in accordance with the books, and long after the decision in the Swift & Company Case, attempts to pick out and have reallocated, in conflict with the bookkeeping records, these three items apparently in order to avoid the application of the rules laid down in the Swift & Company Case.

It is argued that the cases of Atlantic City Co. v. Commissioner, 288 U.S. 152, 53 S.Ct. 383, 77 L.Ed. 667, and Burnet v. Aluminum Goods Co., 287 U.S. 544, 548, 53 S.Ct. 227, 77 L.Ed. 484, sustain plaintiff's contention as to the deductibility of the losses in question, but the first named case turned on the mere question of whether there was affiliation and the court held that there was none. In the Aluminum Co. Case there was a question with reference to the deductibility of a loss but the court said it was "conceded that the loss of respondent's advances to the sales company and the investment in its stock was sustained in 1917, [and] was deductible therefore, if at all, in that year." [Page 229.]

There is nothing in these decisions in conflict with the rule laid down in the Swift Case nor are they authority for holding that a loss occasioned by an advance is deductible in the year in which the advancement was made when there is no evi-

dence showing that the loss was determined in that year.

The case of Autocar Co. v. Commissioner, 3 Cir., 84 F.2d 772, is also relied upon but the facts present an entirely different case. It was one in which the manufacturer sold its product through four agencies each incorporated at nominal capitalization. The Circuit Court of Appeals held (following the dissenting opinion of the Board of Tax Appeals) that there was no real sale made by the manufacturer to the selling agencies and that the selling agencies did not in fact act as separate entities and corporations. Consequently this case has no application.

Our final conclusion is that the rules laid down in the decision of the Swift & Company Case must stand and the plaintiff it not entitled to have the reallocation made which it requests.

It follows that plaintiff's petition must be dismissed, and it is so ordered.