**Elouise CROOK, Walter Crook, and J. W. Evans, Jr., doing business as Raleigh Wrecking Company, Appellants,**

v.

**Freda F. BRYANT, Administratrix of the Estate of Charles O. Bryant, deceased, Appellee.**

No. 7814.

United States Court of Appeals Fourth Circuit.

Argued March 19, 1959.

Decided April 8, 1959.

James M. Henderson, Beckley, W. Va. (Fletcher W. Mann, Beckley, W. Va., on brief), for appellants.

Donald D. Hodson and William H. File, Jr., Beckley, W. Va. (L. L. Scherer, Beckley, W. Va., on brief), for appellee.

Before SOBELOFF, Chief Judge, SOPER, Circuit Judge, and BOREMAN, District Judge.

SOPER, Circuit Judge.

This suit was brought by the Administratrix of the estate of Charles O. Bryant to recover from his employer unpaid minimum wages and overtime compensation alleged to be due the decedent for services rendered in his lifetime under the Fair Labor Standards Act, 29 U.S.C.A. § 201 et seq. The defense was that Bryant's services were not within the purview of the statute but the District Judge, sitting as a jury, overruled this defense and found a verdict and judgment for the plaintiff, under §§ 216 and 260 of the Act, in the sum of $5500, which included $3584.28 or the difference between the amount paid to the employee and the amount due him for services at the rate specified in the statute, and also the sum of $1415.72 allowed by the judge in his discretion as additional liquidated damages, together with the sum of $500 as counsel fees for the plaintiff's attorney.

The defendants, trading under the name of Raleigh Wrecking Company, were located on a five and a half acre tract of land on the outskirts of Beckley, West Virginia. They used the land for the storage of wrecked and disabled cars from which they removed parts and sold them to the public, and also for repair work. The purchase and sale of wrecked or junked cars was confined to West Virginia.

The defendants were also engaged in the wrecking business, in the course of which they furnished 24-hour wrecker and towing service under a contract with the West Virginia Turnpike Commission on nineteen miles of a turnpike running from Beckley to Flat Top, West Virginia. These services were rendered to West Virginia cars and also to cars from other states. The Wrecking Company paid the Commission 4 per cent of the gross receipts earned by them under the contract. The Wrecking Company also furnished wrecker service not covered by the contract to vehicles on interstate U. S. Highways 19 and 21 leading to and from the turnpike, in the course of which they handled vehicles from other states.

Charles O. Bryant, the deceased, was a general employee of the defendants from February 27 to November 4, 1956. He served as night watchman and janitor and answered all telephone calls, including those relating to wrecker service. On Sundays he and other employees spent some time removing small parts from vehicles. He was severely handicapped, having two artificial legs. From Monday to Saturday he worked from 6:00 P.M. to 8:00 A.M., and from 10:00 A.M. on Sunday to 8:00 A.M. on Monday. He was supposed to rest at nights from 10:00 P.M. to 5:00 A.M. For these services he was paid $39.04 per week by check. There was evidence tending to show that he was paid an additional $10.00 per week in cash, but the judge rejected this testimony since it was not supported by the evidence of the bookkeeper who made the entries and found that the total weekly wage was the smaller sum. Thus, there was sufficient basis for the amount found to be due in the judgment of the court, if the work was covered by the statute.

The defense is based on the contentions that the employee was not engaged in commerce within the meaning of the Act and that, in any event, the amount of such work performed by him was so trivial that it should be disregarded as *de minimis*. In support of the first contention, it was shown that the greater part of the defendants' business related to the storage and repair of wrecked and junked cars and the sale of parts therefrom; and that the turnpike lies entirely in the State of West Virginia, running from Charleston to Princeton. Relying on these facts, the defendants argue that not only their

principal business but also their wrecking business was wholly intrastate in character and therefore outside the scope of the statute. Since the turnpike is a limited access toll road built by the West Virginia Turnpike Commission and is used by vehicles traveling interstate, not by necessity but for convenience only, it is contended that none of the business of the company and none of the activities of the deceased employee were interstate in character.

The District Judge correctly rejected this contention. The turnpike, as shown by highway maps introduced into evidence, is a connecting link of the system of interstate highways and thus serves as an instrumentality of interstate commerce although it lies solely in a single state; and the services of the employee, insofar as they help to maintain the road free from obstruction, facilitated the flow of commerce from state to state. In Alstate Construction Co. v. Durkin, 345 U.S. 13, 73 S.Ct. 565, 97 L.Ed. 745, and in prior decisions cited therein, it was held that employees engaged in repairing interstate roads are in commerce, and in Overstreet v. North Shore Corp., 318 U.S. 125, 63 S.Ct. 494, 87 L.Ed. 656, it was held that the Fair Labor Standards Act is applicable to the operators of a drawbridge on a toll road used by vehicles traveling in interstate commerce because without their services the road would not be open to the passage of goods and persons across state lines. With these rulings in mind it becomes obvious that the services rendered by Bryant in connection with the wrecking business of his employers, helped to keep the interstate flow of traffic free and unobstructed and, hence, were rendered "in commerce" within the meaning of the statute.

█ █  The evidence bearing on the second defense does indicate that the wrecking services of the defendants constituted only a small part of their entire business. Their total gross income during 1956 was $57,407.39, of which only $1008.22, or 1.75 per cent of the total, was received from the turnpike wrecker service. To this should be added the amount received for wrecker services rendered on the other highways mentioned above. No evidence was offered as to the amount received from the latter source, but the impression one gets from the record is that it did not equal the amount earned under the contract. The application of the Act, however, depends upon the character of the employees' activities, and the nature of the employers' business is not determinative. See Overstreet v. North Shore Corp., 318 U.S. 132, 63 S.Ct. 494. Confining our attention to the quantum of Bryant's activities it may fairly be said that the services rendered by him in the removal of wrecked or disabled vehicles from the highway formed a larger percentage of his total duties than the wrecking business of his employers bore to their entire business. Without someone on duty throughout the night to respond to emergency calls the defendants could not have carried out their obligations under their contract with the Turnpike Commission.

The situation is fairly described in the following passage from Armour & Co. v. Wantock, 323 U.S. 126, 133, 65 S.Ct. 165, 168, 89 L.Ed. 118, where it is held that compensable working time may consist in time necessarily spent in being ready for action:

"Of course an employer, if he chooses, may hire a man to do nothing, or to do nothing but wait for something to happen. Refraining from other activity often is a factor of instant readiness to serve, and idleness plays a part in all employments in a stand-by capacity. Readiness to serve may be hired, quite as much as service itself, and time spent lying in wait for threats to the safety of the employer's property may be treated by the parties as a benefit to the employer. Whether time is spent predominantly for the employer's benefit or for the employee's is a question dependent upon all the circumstances of the case."

544

In Mabee v. White Plains Pub. Co., 327 U.S. 178, 66 S.Ct. 511, 90 L.Ed. 607, where the out of state circulation of a newspaper was only one-half of one percent of the total, it was held that Congress has made no distinction based on the volume of interstate business in determining whether an *employer* is subject to the Act and that he is subject thereto even if the volume of his interstate shipments is unsubstantial; but it was also held that the application of the Act to his *employees* depends upon the character of *their* work. This decision has been interpreted to mean that the work of an employee in interstate commerce must be substantial in order to entitle him to the protection of the statute. Skidmore v. John J. Casale, Inc., 2 Cir., 160 F.2d 527. Accepting this view we are of the opinion that the amount of work performed by the employee in the pending case was substantial.

■■■ The contention, however, is also made that only so much of the work of the employee as pertained to the wrecking business was in commerce and compensable under the Act. There is strong authority for the proposition that if an employee's duties are partly intrastate and partly interstate, his entire compensation must conform to the provisions of the statute. Walling v. Jacksonville Paper Co., 317 U.S. 564, 572, 63 S.Ct. 332, 87 L.Ed. 460; Kirschbaum Co. v. Walling, 316 U.S. 517, 524, 62 S.Ct. 1116, 86 L.Ed. 1638; Skidmore v. John J. Casale, Inc., 2 Cir., 160 F.2d 527, 529, 530; McComb v. W. E. Wright Co., 6 Cir., 168 F.2d 40, 42; Stewart-Jordan Distributing Co. v. Tobin, 5 Cir., 210 F.2d 427, 431, 432; New Mexico Public Service Co. v. Engel, 10 Cir., 145 F.2d 636, 640; Southern California Freight Lines v. McKeown, 9 Cir., 148 F.2d 890. In this circuit we have specifically held that an employee so engaged is completely covered by the Act as to all of his activities when the two classes are commingled in the employer's operations and he makes no attempt to distinguish between the two in the payment of

wages. Guess v. Montague, 4 Cir., 140 F.2d 500, 504; Tobin v. Blue Channel Corp., 4 Cir., 198 F.2d 245, 248. That is the situation in the pending case, and accordingly the judgment of the District Court will be affirmed.

Affirmed.