Arthur J. GOLDBERG, Secretary of Labor, United States Department of Labor, Plaintiff,

v.

Robert A. HARRELL and Margaret E. Bridgeforth, trading and doing business under the name and style, Nehi Bottling Company, Defendants.

Civ. No. 13098.

United States District Court
D. Maryland.

June 19, 1962.

John D. Thrush, Gettysburg, Pa., for plaintiff.

Henry H. Whiting, Winchester, Va., William J. Evans, Baltimore, Md., for defendants.

WINTER, District Judge.

Upon their written request, the Secretary of Labor sues, under the provisions of the Fair Labor Standards Act of 1938, as amended, 29 U.S.C.A. (1956) § 201 et seq. (hereafter called the "Act"), to recover minimum wages and overtime compensation for Charles William J. Creager, Mason F. Long, Jr., Albert Monroe, Charles Monroe and Max R.

Snowden, present and former employees of Robert A. Harrell, et al., trading as Nehi Bottling Company (hereafter called "defendant"). The period of employment differed for each of the employees, but they were all employed generally within the period December 20, 1958 to July 9, 1960.

The defendant was a soft drink bottler, having its place of business in Hagerstown, Maryland, and having a franchise to bottle, distribute and deal in Nehi and Royal Crown soft drinks. In addition to bottling, it purchased and resold Nehi canned soft drinks and produced and sold Nehi and Royal Crown flavored syrup for soft drink vending machines. Prior to the expiration of the period in question, it also distributed syrup and dried milk for the sale of hot chocolate and chocolate milk by vending machines.

The parties have agreed that if the Act is applicable, they will agree on the amount of the judgment to be entered. The only question involved here is one of coverage of the Act.

Defendant purchased the various ingredients and component parts of its bottling operation from various sources, many of which are out-of-state. It purchased sugar from Baltimore, Maryland; cocoa, used in the preparation of chocolate milk and hot chocolate, from Hershey, Pennsylvania; bottle tops (crowns) from Baltimore, Maryland; bottles from Fairmount, West Virginia; flavoring concentrates from Columbus, Georgia; citric acid and other chemical additives from Clifton, New Jersey; powdered milk from New York City; paper cartons from Atlanta, Georgia; and canned beverages of different flavors from Philadelphia, Pennsylvania. Delivery of these was taken by defendant at its Hagerstown, Maryland plant and warehouse.

Additionally, defendant made occasional purchases of racks for holding bottles of soft drinks, but the place of origin is not clear.

The canned soft drinks purchased by defendant were resold in the form in which they were delivered to defendant from Pennsylvania. Defendant also bot-

tled soft drinks by mixing the concentrate, citric acid, sugar and other ingredients and bottling the resulting syrup, or using the same with the addition of carbonated water to produce bottled soft drinks.

The employee Creager was employed as a type of plant foreman. He reported to work prior to the other employees to begin the mixing of syrup and to ready the bottling machines for operation. He also supervised the other employees.

The other employees on whose behalf the suit is brought are referred to as "laborers." Their duties included the unloading of shipments received by defendant, including the unloading of sugar, concentrate, canned beverages, bottle tops, paper cartons, labels and new bottles, and these shipments averaged about one truck per week. Additionally, these employees assisted in the mixing of syrup, which occurred daily, and took one and a half hours, to the extent of carrying the component parts from the place stored, washing syrup jugs, sorting bottles, and applying labels, as well as sorting beverage bottles, operating the beverage bottle soaker, loading canned beverages for local delivery, and performing cleaning and maintenance work in and about the bottling plant.

The unloading activities occurred on a regular schedule, with some seasonal variation. Unloading usually occurred once a week, although there would be some weeks during the winter that there was no unloading, and some weeks during the summer that unloading occurred as much as two or three times a week. Estimates were given as to the length of time spent in unloading. Sugar, which arrived weekly, would take approximately one-half hour to unload; concentrate, which arrived every two or three weeks, five to ten minutes; cans of beverages, which arrived every two weeks, about one and a half hours; and paper cartons, which arrived once a year, approximately two hours. Bottle tops were delivered three times a year and bottles once a year, but no estimate of unloading time was given.

Canned beverages were placed in defendant's warehouse, where a stock of goods was maintained. On orders from customers, canned beverages were withdrawn from the warehouse to fill particular orders. Defendant did not buy canned beverages from its supplier against specific orders from its customers but, rather, filled those orders from its general inventory. There was no evidence to indicate that defendant, in selling canned beverages, acted as agent for the company which produced them. Rather, the facts indicate that defendant, while having a franchise to use the trade mark "Nehi" and to deal in "Nehi" products, dealt in the same for its own account.

All sales and deliveries of syrup, bottled soft drinks and canned drinks were made locally, i. e., in Hagerstown, Maryland, except that two of defendant's customers—Serv-U-Vending Company and Hagerstown Canteen Service—which, collectively, accounted for two per cent of defendant's total sales, sold approximately twenty per cent of the syrup, purchased from defendant, in Pennsylvania, so that approximately four-tenths of one per cent of the total dollar volume of defendant's sales was to ultimate consumers outside of the State of Maryland.

■ The Secretary argues that the employees in question are "engaged in commerce or in the production of goods for commerce * * *" within the meaning of §§ 6 and 7 of the Act, 29 U. S.C.A. (1956) §§ 206 and 207.

*The "In Commerce" Aspect.*

Unquestionably, in the unloading activities the employees were engaged in commerce to the extent that they *unloaded* the canned beverages and the other merchandise shipped to defendant from points outside of the State of Maryland, McComb v. Herlihy, 161 F.2d 568 (4 Cir. 1947). It cannot be said that their activities "in commerce" are any more extensive, because the facts show that the *loading* activities of canned beverages were intrastate, since the canned beverages were not purchased by the defendant to meet specific orders of its intra-

state customers and, hence, the canned beverages had come to rest in the State of Maryland prior to removal from the warehouse and delivery to the ultimate consumer, Walling v. Jacksonville Paper Co., 317 U.S. 564, 63 S.Ct. 332, 87 L.Ed. 460 (1943); Annotation 149 A.L.R. 386 (1944). Neither was defendant an agent or conduit for the "Nehi" Company, which produced canned beverages, Mitchell v. Livingston & Thebaut Oil Company, 256 F.2d 757 (5 Cir. 1958); Cf. McComb v. Blue Star Auto Stores, 164 F.2d 329 (7 Cir. 1947), cert. den. 332 U. S. 855, 68 S.Ct. 387, 92 L.Ed. 424 (1948); Mitchell v. C. & P. Shoe Corporation, 286 F.2d 109 (5 Cir. 1960).

While certain of the unloading activities of the employees are thus "in commerce," the time consumed in their performance is slight. Whether these activities, standing alone, would render the employees subject to the Act, is not a question which need be decided when the further activities of the employer and of its employees are considered.

*The "Production of Goods for Commerce" Aspect.*

■ The facts show that .4% of the employer's sales are for distribution and ultimate consumption of its product outside of the State of Maryland. Mabee v. White Plains Pub. Co., 327 U.S. 178, 66 S.Ct. 511, 90 L.Ed. 607 (1946), held that a publisher of a daily newspaper .5% of the circulation of which regularly was sent to another state, was engaged in the production of goods for interstate commerce within the meaning of the Fair Labor Standards Act of 1938. The White Plains case directs the legal conclusion that the defendant here is likewise engaged in the production of goods for interstate commerce within the meaning of the Act. The White Plains case decided only the question of coverage in regard to the employer and remanded the case to the lower courts to determine whether the character of the employees' work resulted in their being covered. Such a question involved a determination of whether the employees' work was such that it could be said that the employee

was engaged in the production of goods for commerce, that such activity was regular and recurring and, even though small in amount, was not insubstantial, because in determining whether an employee is covered by the Act, the character of the individual employee's duties and not the nature of the employer's activities is controlling, Kirschbaum Co. v. Walling, 316 U.S. 517, 62 S.Ct. 1116, 86 L.Ed. 1638 (1942); Walling v. Jacksonville Paper Co., Supra; Crook v. Bryant, 265 F.2d 541 (4 Cir. 1959); 29 C.F.R. (Supp. 1962) §§ 776.2 and 776.3.

■ From the facts it appears that the employees in question spent at least one and one-half hours per day in the mixing of syrup, bottling and labeling it, and that this syrup was the subject of the interstate sale and transportation. The mixing and bottling activities occurred daily and, where it appeared that Creager worked regularly not less than twelve hours a day, excluding lunch, and the other employees not less than nine and one-half hours, excluding lunch, two conclusions are inevitable: (1) the activities of the employees were not only directly essential to the production of goods for interstate commerce, but constituted the actual production of goods for interstate commerce, 29 U.S.C.A. (1956) § 203(j); and (2) in the light of the judicial gloss placed upon the interpretation of the Act, Cf. Crook v. Bryant, 265 F.2d 541, 543–544 (4 Cir. 1959); Mitchell v. Royal Baking Company, 219 F.2d 532 (5 Cir. 1955), the period of time devoted to such activities was substantial. Hence, they were covered by the Act. This conclusion is buttressed by the fact that, in respect of certain of the unloading activities, although sporadic and perhaps minimal in amount, the employees in question are "in commerce" within the meaning of §§ 6 and 7 of the Act. Absent records maintained by the defendant to show a breakdown of the time spent in activities covered by the Act, and those not so covered, the entire work time of each employee must be considered as covered, Crook v. Bryant, supra; Guess v. Montague, 140 F.2d 500 (4 Cir.

1943); 29 C.F.R. (Supp.1962) § 776.4 (b).

In the light of these findings of fact and conclusions of law, the Court will enter judgment for the plaintiff in the amount to be agreed upon between counsel, with costs.