## H. B. ZACHRY COMPANY
### v.
### The UNITED STATES.
### No. 332–61.
United States Court of Claims.
April 16, 1965.

Chester H. Johnson and O. D. Hite, San Antonio, Tex., for plaintiff. Robert J. Bird, Washington, D. C., and George W. Krog, San Antonio, Tex., of counsel.

Edwin J. Reis, Washington, D. C., with whom was Asst. Atty. Gen. John W. Douglas, for defendant. Jay C. Cox, Swainsboro, Ga., was on the briefs.

Before COWEN, Chief Judge, and LARAMORE, DURFEE, DAVIS and COLLINS, Judges.

COWEN, Chief Judge.

This is a suit to recover amounts withheld from final payment due plaintiff under two government contracts. The withholding was predicated upon alleged violations of the Davis-Bacon Act, 40 U.S.C. §§ 276a to 276a–7 and the Eight-Hour Laws, 40 U.S.C. §§ 324–326. We are required to resolve basic disagreements as to matters of fact and questions of law.

Plaintiff is a corporation whose principal business is that of a general construction contractor. In early 1957, plaintiff submitted bids on two projects at Holloman Air Force Base, New Mexico, and being the low bidder was awarded contracts DA 29–005–ENG–1900, hereinafter referred to as "1900" (awarded in March 1957), and DA 29–005–ENG–1955, hereinafter referred to as "1955" (awarded in June 1957).

Contract 1900 was the major contract, being in the amount of $1,700,000, and calling for the construction of the principal runways and adjacent aprons. Contract 1955 was in the amount of $380,000 and provided for the construction of certain aircraft parking areas, also denominated "aprons". Both contracts contained the usual commercial construction contract provisions requiring plaintiff to supply all the labor and materials for the projects according to detailed technical specifications.

The contracts, which incorporated the provisions of the invitation for bids, also contained the standard federal construction contract clauses, including those repetitive of and designed to implement the labor statutes at issue in this litigation. The latter are set forth in our finding 2.

In order to perform its contract, plaintiff, the prime contractor, had to acquire certain materials, including base material, concrete aggregate, hot mix, and sand. They are standard commercial materials and were not specially designed for this project. An initial attempt was made to purchase these supplies at a price which included delivery to the site of the work, i. e., f. o. b. site. This proved to be impossible, since the local suppliers were unable to provide the requisite transport for the large volume of materials needed. Plaintiff therefore contracted with H. B. Llewellyn Sand & Gravel Co., located in Alamogordo, New Mexico, about 12 miles (one way) from the base, and with Las Cruces Redi-Mix Company of Las Cruces, New Mexico, located about 70 miles (one way) from the base, for the needed supplies, at a price f. o. b. the suppliers' plants. The materialmen were established commercial suppliers selling to the general public at all times relevant to this action.

In order to provide for the transportation of the materials to Holloman Air Force Base, plaintiff contracted with the Glover Distributing Company, hereinafter referred to as "Glover". The contract with Glover (which is quoted in finding 7) provided that plaintiff would pay a specified amount per cubic yard (or per cubic yard per mile) for materials delivered by Glover to the project. The agreement, which was denominated a "Subcontract", contained a requirement that Glover comply with all "applicable Federal and State Labor Laws and Regulations". The contract also contained provisions that are generally found in agreements made with a trucking subcontractor (or independent contractor).

At and prior to the date of its contract with plaintiff, Glover was principally engaged in the transportation of petroleum products. In addition, Glover had an established business of transporting building materials to contractors working on federal, state, and municipal construction projects in the area where Holloman Air Force Base is located.

To perform its contract with plaintiff, Glover had available only two trucks. In order to provide most of the necessary transportation on this and other jobs, Glover contracted with individual truck owners who would usually drive their own trucks and are referred to as owner-drivers. A few of the owner-drivers owned more than one truck, and for these trucks as well as for the Glover trucks, drivers were employed by the truck owners, although all were presumably paid by Glover. Such drivers are referred to herein as non-owner-drivers.

The owner-drivers were paid an amount based on the volume of material delivered. The non-owner-drivers were paid at an hourly rate.

The truck drivers hauled materials for Glover from spring 1957 until early in 1958. At times, up to 100 drivers were employed upon the projects. The work performed by these drivers consisted entirely of driving dump trucks. They would proceed to the suppliers, pick up a load of material, drive to Holloman Air Force Base, where the load was dumped in stockpiles located within the air base. Access to the stockpiles was gained over a one-mile road, located partially on the base and partially on private property. The road was specially constructed to provide such access. After the truck drivers dumped the materials in the stockpiles, all further handling, processing, and transportation of the materials were performed by plaintiff's construction employees. About 90 percent of the truck drivers' time was spent at the source of supply and enroute between the suppliers and the point of delivery.

In June 1957, defendant received a complaint that an individual truck driver was not being paid in accordance with the labor provisions of the contract. The complaint led to a complete investigation

of plaintiff's and Glover's labor practices. As a result of the investigation, conducted primarily by the Corps of Engineers' resident labor advisor at Holloman Air Force Base, the defendant withheld the amounts shown in finding 20 from the final payment due plaintiff under the contracts. Following an adverse decision by the Solicitor of the Department of Labor, plaintiff brought this action.

Defendant found (and it is not now disputed) that Glover had paid the owner-drivers gross compensation determined by the number of cubic yards of material hauled as indicated on the suppliers' haul tickets. The compensation was paid in two checks. The first check was computed by calculating the number of hours worked per week from the time cards maintained by the employees and multiplying this total by the wage rate prescribed in the contracts. The second check, denominated "truck earnings", represented the balance due after subtracting the amount of the first check from the gross compensation. The amounts paid as truck earnings varied and were not necessarily related to the size of the truck or the number of hours it was used. The non-owner-drivers were paid wages at the rates specified in the contracts; their hours of work were taken from time cards which they themselves prepared. At the behest of defendant, Glover maintained and submitted payrolls for both owner and non-owner-drivers. Glover never conceded that the labor statutes were applicable to either category of driver.

Defendant's investigator took exception to two facets of Glover's procedures: (1) The records of the hours worked, and (2) the amounts paid for the use of the trucks provided by the owner-drivers.

Since defendant questioned whether the time cards maintained by the truck drivers were accurate, the investigator made timings of truck runs and computed average round trip times for each run. In order to protect the integrity of the basic contract labor rates, defendant felt it necessary to establish a fair truck rental in the combined labor-truck compensation arrangement provided for by Glover.

The investigator tried to ascertain the prevailing rental rates for dump trucks in the Alamogordo area but found that Glover had virtually every such truck under contract. Consequently, defendant substantially adopted the rental rates for dump trucks with drivers as set forth in the Estimator's Master Data Sheet, a document prepared by the Southwestern Division, Corps of Engineers, and the Association of General Contractors, for use in estimating the cost of area construction projects.

Having thus fixed the basis for his computations, the investigator recomputed the hours worked by the truck drivers. The suppliers' haul tickets indicated the origin of all supplies and cumulatively showed the total number of hauls made by each driver from that source The time worked per day was determined by multiplying the number of hauls by the average time that the defendant's investigator had calculated as necessary for a round trip between the supplier and the air base. The daily hours were totaled to produce a weekly figure. The hours worked for the week were multiplied by the combined truck-labor rate obtained from the Estimator's Master Data Sheet for the size of truck involved. To this sum was added the overtime premium (one-half of the contract labor rate) for all daily hours worked in excess of eight hours. The grand total was compared with Glover's records to determine the underpayments of wages.

Defendant determined the wages due non-owner-drivers by multiplying the number of hauls made by each driver by the average time required per haul as calculated by defendant's investigator. The weekly total of hours as thus determined was then multiplied by the contract hourly wage rates to arrive at the weekly straight time wages.

When defendant, using the methods described above, determined that there was a violation of the Eight-Hour Laws, a penalty of $5 was assessed.

Glover's records were accepted by defendant to the extent that they showed the amount of compensation actually paid

to the truck drivers and the number of trips (or hauls) made by each driver.

Of the total amount defendant withheld from the final payments due upon the contracts, plaintiff conceded that $140 was properly retained for violations of the Eight-Hour Laws involving its employees. Plaintiff sues to recover $9,414.46 withheld on account of alleged violations of the labor statutes as to the truck drivers employed by Glover.

By letter of April 21, 1959, the contracting officer officially notified plaintiff of the results of the investigation. At all times, plaintiff denied that the Davis-Bacon Act and the Eight-Hour Laws applied to the truck drivers and vigorously asserted this position in detailed correspondence with the contracting officer.

The contracting officer consistently took the position that neither he nor the Armed Services Board of Contract Appeals had jurisdiction of the dispute involving the application of the labor laws. On the other hand, plaintiff insisted that the contracting officer was obligated to make findings of fact and to render a decision on the dispute. This difference of viewpoint led to a conference and to the execution of a stipulation of facts which was forwarded to the Department of Labor. Except for the stipulation, which we shall discuss hereinafter, it does not appear that the parties ever agreed upon the basic facts underlying the legal issues as to the application of the Davis-Bacon Act and the Eight-Hour Laws.

By letter of April 3, 1961, the Solicitor of Labor, acting for the Secretary of Labor, ruled adversely to plaintiff. The opinion did not contain a legal discussion of statutory coverage. Rather, it referred to and relied upon five previous opinions of the Solicitor and one opinion by the Attorney General, 41 Op.Atty.Gen. 488 (1960).

Plaintiff responded to the ruling by stressing its non-acquiescence and by reiterating its request for a final decision by the contracting officer from which it could appeal. After plaintiff's request was again denied, this suit followed.

■■ We shall first discuss defendant's contention that plaintiff did not dispute the underlying facts in the case and that the only question presented to the contracting officer was a legal one—the application of the labor statutes. This contention is not supported by the record. There was a sharp dispute as to the accuracy of the time records kept by the truck drivers and as to defendant's determination of the portion of the compensation paid to the truck drivers that should be allocated for truck rental. The contracting officer's refusal to make findings of fact or to entertain an appeal was sufficiently broad to cover issues of fact as well as issues of law. The Department of Labor procedures did not independently concern themselves with factual matters. The contracting officer's report, which contained statements of fact disputed by plaintiff, was accepted as the factual basis for the decision by the Department of Labor. At that time, the Department did not have an appellate body before which plaintiff could be heard on the issues in question here.[1]

Under these circumstances we cannot conclude that the findings of fact that are implicit in the Solicitor's opinion or in the contracting officer's report must be accepted as correct. We take the contracting officer at his word and proceed on the basis that he made no findings of fact and rendered no decision in the case. Thus, it follows that the factual determinations of the contracting officer are not entitled to the limited scope of review provided by the Wunderlich Act, 41 U.S.C. § 321; cf. Winn-Senter Construction Co. v. United States, 75 F.Supp. 255, 110 Ct.

1. The failure to provide for appellate procedures has received comment and a proposal for correction, pp. 909, 1078–1084, Hearings, Special Subcommittee on Labor, Committee on Education and Labor, House of Representatives, 87th Cong. 2d Sess., "A General Investigation of the Davis-Bacon Act and Its Administration", June–August 1962 [hereinafter referred to as "1962 Hearings"]. The hearings are a valuable source of general information on the act.

Cl. 34 (1948). Even if we were to hold that the issues were within the provisions of the disputes clause of the contracts and were appealable to the board of contract appeals, the contracting officer's refusal to issue a final decision excuses plaintiff from any duty it may have had to pursue the administrative remedies provided by the contract. Cf. C. J. Langenfelder & Son, Inc. v. United States, Ct.Cl., 341 F.2d 600, February 19, 1965; Garod Radio Corp. v. United States, 307 F.2d 945, 158 Ct.Cl. 596 (1962).

However, we do not reach the issue of what agency had authority to make final disposition of the contract disputes involving the coverage of the labo · statutes or whether there is a division of responsibility between the agencies concerned.[2]

█ As previously noted and as shown in our finding 20, the parties executed a stipulation in May 1960 with the understanding that it would be submitted to the Department of Labor, along with the findings made by the defendant's labor advisor, for the Secretary of Labor's use in determining the applicability of the contract labor provisions to the truck drivers. Paragraph 14 of the stipulation, relating to the owner-drivers, stated that the gross earnings of each truck driver, exclusive of truck rental, equaled or exceeded payments at the minimum wage rate applicable to truck drivers as predetermined by the Secretary of Labor. A literal reading of that portion of the stipulation would render moot all questions regarding the application of the labor statutes to the owner-drivers. However, we have found (finding 25 (d)) that the parties did not in-

tend that such a meaning should be ascribed to paragraph 14. Plaintiff knew that defendant had consistently taken the position that the truck drivers did not receive the specified minimum wages. For this reason, we have found that paragraph 14 was intended by the parties to mean that the truck drivers received the minimum contract wages only if the hours of work reported on Glover's payrolls were correct and if defendant's contention as to the amounts that should be allowed for the fair rental value of the truck is disregarded. A court may relieve a party of his stipulation if necessary to prevent an injustice, particularly where facts contrary to the stipulation are established by the evidence. Federal Export Corp. v. United States, 25 F.Supp. 109, 88 Ct.Cl. 60 (1938), cert. denied 308 U.S. 590, 60 S.Ct. 120, 84 L.Ed. 494 (1939). The evidence shows and we have found that the remaining portions of the stipulation correctly stated the meaning of the parties. At the least, the stipulation is an admission by the parties in interest.

█ Upon a review of the whole record, we have found that plaintiff has established by a preponderance of the evidence that the hours worked by the truck drivers are correctly reflected in Glover's payrolls. We have rejected defendant's reconstruction of the hours worked by the truck drivers for the several reasons set forth in our finding 35. Defendant did not at any time present evidence as to the minimum time required for a truck driver to make a round trip between the suppliers' plants and the air base. The investigator's work papers were not preserved, and it is thus impossible to de-

2. Originally the boards of contract appeals refused jurisdiction of cases involving Davis-Bacon coverage problems, see e. g. Noonan Constr. Co., 58–2 BCA para. 1833 (ASBCA 1958). However, it is not clear to what extent purely factual questions arising under the contract labor provisions may be open to the boards, Gersten Constr. Co., 60–1 BCA para. 2602 (ASBCA 1960). The Attorney General concurs in the paramount jurisdiction of the Department of Labor, 41 Op.Atty.Gen. 488 (1960). The Comptroller General disagrees, and asserts that under Reorganization Plan No. 14, 5 U.S.C. § 133z–15, the primary adjudicatory authority lies with the contracting agencies in a situation like the one before us and that the Department of Labor is merely the advisor of the agencies and the promulgator of regulations, Ms. Comp.Gen.B–147602, January 23, 1963; Ms.Comp.Gen.B–148076, July 26, 1963.

termine the accuracy of his sampling process. He made calculations of the average time required for round trips by the truck drivers and, in doing so, he failed to take into account a number of essential factors. In addition, one truck driver who testified and a number who were interviewed by defendant's investigator stated that they were paid for the hours they worked at the minimum wage rates posted on the jobsite. At times as many as 100 drivers were employed by Glover. Many of these were transients. If Glover's payrolls were as inaccurate and unreliable as defendant claims, it would appear that defendant could have found at least a few drivers who would have so stated.

The Davis-Bacon Act provides in pertinent part as follows, at 40 U.S.C. § 276a:

" * * * every contract based upon these specifications shall contain a stipulation that the contractor or his subcontractor shall pay all mechanics and laborers employed directly upon the site of the work, unconditionally and not less often than once a week, and without subsequent deduction or rebate on any account, the full amounts accrued at time of payment, computed at wage rates not less than those stated in the advertised specifications, regardless of any contractual relationship which may be alleged to exist between the contractor or subcontractor and such laborers and mechanics, * * *."

and at 40 U.S.C. § 276a–2:

 *     *     *     *     *     *

"(b) If the accrued payments withheld under the terms of the contract, as aforesaid, are insufficient to reimburse all the laborers and mechanics, with respect to whom there has been a failure to pay the wages

required pursuant to sections 276a to 276a–5 of this title, such laborers and mechanics shall have the right of action and/or of intervention against the contractor and his sureties conferred by law upon persons furnishing labor or materials, and in such proceedings it shall be no defense that such laborers and mechanics accepted or agreed to accept less than the required rate of wages or voluntarily made refunds."

Research into the case law dealing with the extent to which the act is applicable under the circumstances of this case is notably unrewarding. The parties have cited no cases on this facet of the act and we have found none.[3]

■ The reports[4] of the congressional committees which considered the Davis-Bacon Act do not throw any light on the issues to be decided. However, the debates on the floor of Congress on a bill that was substantially the same as the 1935 amendment to the Davis-Bacon Act, as well as the debates on the Federal Road Act,[5] which incorporated the Davis-Bacon Act, demonstrate quite clearly that Congress did not intend that employees of materialmen would be covered by the Davis-Bacon Act. The legislative history does not provide an exact definition of "materialmen", nor does it reveal whether a supplier of the material is exempt from the provisions of the act because he is not a "subcontractor" as mentioned in the statute, or because his work is not performed "directly upon the site" or because his function is not a part of the construction contract.

■ Therefore we proceed to an additional source of help on the issue before us. We are enjoined by the defendant to give great weight to the administrative interpretations of the statute by the ex-

---

3. The cases cited by the parties involve other statutes including the Fair Labor Standards Act, 29 U.S.C. § 201 et seq.; the Heard Act, 28 Stat. 278, and the Miller Act, 40 U.S.C. § 270a et seq. None of the cases involve the resolution of the status of an independent trucking contractor who is engaged solely in hauling to the jobsite standard commercial supplies furnished by a materialman who sells to the general public.

4. H.Rep. No. 1756, 74th Cong. 1st Sess.; S.Rep. No. 1155, 74th Cong. 1st Sess.

5. 75 Cong.Rec. 12366 (1932); 102 Cong. Rec. 10967 (1956).

ecutive agency designed to administer the act. This is an accepted legal principle, United States v. Zucca, 351 U.S. 91, 76 S.Ct. 671, 100 L.Ed. 964 (1956); United States v. Leslie Salt Co., 350 U.S. 383, 76 S.Ct. 416, 100 L.Ed. 441 (1956). Therefore, we shall look to the administrative interpretations of the statute by the Secretary of Labor (appearing as opinions of the Solicitor of the Department of Labor) and to the regulations promulgated under Reorganization Plan No. 14, 5 U.S.C. § 133z–15.[6]

Beginning as early as 1942,[7] the Solicitor has excluded from statutory coverage the employees of bona fide materialmen who sell to a contractor engaged in construction contracts covered by the Davis-Bacon Act. The exemption has been qualified to the extent that the materialman must be selling supplies to the general public, the plant must not be established specially for the particular contract, and the plant is not located at the site of the work.[8] The Solicitor has always held that truck drivers employed by materialmen (exempt from statutory coverage) to transport supplies to the jobsite are no more subject to the provisions of the Davis-Bacon Act and the Eight-Hour Laws than are other employees of the ma-

---

6. The regulations, which are found in 29 C.F.R. Part 5, contain the following pertinent provisions:

 \*     \*     \*     \*     \*

"§ 5.2 Definitions.—As used in the regulations in this part:

 \*     \*     \*     \*     \*

"'(f) The terms "building" or "work" generally include construction activity as distinguished from manufacturing, furnishing of materials, or servicing and maintenance work \* \* \* The manufacture or furnishing of materials, articles, supplies or equipment (whether or not a Federal or State agency acquires title to such materials, articles, supplies, or equipment during the course of the manufacture or furnishing, or owns the materials from which they are manufactured or furnished) is not a "building" or "work" within the meaning of the regulations in this part unless conducted in connection with and at the site of such a building or work \* \* \*

"'(g) The terms "construction", "prosecution", "completion", or "repair" mean all types of work done on a particular building or work at the site thereof, \* \* \* in the construction or development of the project, including without limitation, altering, remodeling, painting, and decorating, the transportation of materials and supplies to or from the building or work by the employees of the construction contractor or construction subcontractor, and the manufacturing or furnishing of materials, articles, supplies or equipment on the site of the building or work, \* \* \*

 \*     \*     \*     \*     \*

"'(i) Every person paid by a contractor or subcontractor in any manner for his labor in the construction, prosecution, completion, or repair of a public building or public work, or building or work financed in whole or in part by loans, grants or guarantees from the United States, is "employed" and receiving "wages", regardless of any contractual relationship alleged to exist.'

"§ 5.11 *Rulings and interpretations.*— All questions arising in any agency relating to the application and interpretation of the regulations contained in this part and of the Davis-Bacon Act, as amended, and as extended to the labor standards provisions of the Federal-Aid Highway Act of 1956, of the Copeland and Anti-Kickback Acts, the Eight-Hour Laws, as amended, and the labor standards provisions of the following acts, the National Housing Act, as amended, the Housing Act of 1949, as amended, the Hospital Survey and Construction Act, the Federal Airport Act, as amended, the School Survey and Construction Act of 1950, and the Defense Housing and Community Facilities and Services Act of 1951, as amended, and the Federal Civil Defense Act, as amended, shall be referred to the Secretary of Labor for appropriate ruling or interpretation. The rulings and interpretations of the Secretary shall be authoritative and may be relied upon as provided for in section 10 of the Portal to Portal Act of 1947. Requests for such rulings and interpretations should be addressed to the Secretary of Labor, United States Department of Labor, Washington 25, D.C.

7. Op. Sol. Lab. to Construction Division, War Department, Sept. 15, 1942. 1962 Hearings, pp. 54, 830.

8. Op. Sol. Lab. to Army Corps of Engineers, December 26, 1957; Op. Sol. Lab. No. DB–15, Oct. 13, 1961; Op. Sol. Lab. DB–30, October 15, 1962; Op. Sol. Lab. DB–38, July 8, 1963.

terialmen.[9]  This ruling was expanded by an opinion holding that employees of a trucking firm under contract to the materialmen to deliver the supplies to the site are not subject to the provisions of the Davis-Bacon Act.[10]

However, in later opinions, the Solicitor has introduced a functional distinction between "materialmen" and "subcontractors", or has separated work involved in the materialman's function from work done under the contract. In two opinions, he has held that where a contractor covered by the statute is also an established materialman selling to the general public, the employees of his supply operation, including those who are engaged in the delivery of materials to the federal construction project, are not subject to the Davis-Bacon Act.[11]

Finally, and after his opinion of October 3, 1961, in this case, the Solicitor on March 12, 1962, issued his opinion designated as DB–22, wherein he held that the employees of an established trucking firm under contract to transport materials from the materialman to the jobsite were not covered by the Davis-Bacon Act, regardless of whether the trucking firm was under contract to the materialman or to the prime contractor— he ruled that in either situation the truckers were performing a materialman's function.

█ We are constrained to the view that the conclusion reached by the Solicitor in his opinion DB–22 is applicable to the particular facts of this case. We see no material distinctions in the facts and we believe that our conclusion is in accord with the intention of Congress in enacting the Davis-Bacon Act.

The suppliers from which the material for the contracts in suit were obtained were in the business of selling such materials to the general public and were not established specifically to furnish materials for plaintiff's contracts. Glover was and is an independent trucking concern and indeed appears to have been the major transporter of construction materials in the area. We do not believe that the status of his employees was affected because of the fact that in its existing business of hauling building materials, Glover obtained most of its trucks for this and for other contracts from owner-drivers. Glover introduced no new factor into the economy because it used the same procedure on other federal, state and municipal contracts. We see no logic in holding that owner-drivers who are employed by an independent trucker are more deserving of statutory coverage than non-owner drivers employed by the same trucking firm.

Opinion DB–22 is in conflict with the Department of Labor decision in this case, which did not contain a legal analysis of the basis for the decision. Rather, the decision cited previous opinions reflecting the general position of the Solicitor. We also note that opinion DB–22 has not been repudiated but has been reaffirmed in the Solicitor's opinion No. DB–36, issued June 24, 1963. Therefore, we must conclude that the opinion designated as DB–22 represents the position of the defendant because we find nothing to indicate that it is an aberration.

We have examined the regulations which are quoted in substantial part in footnote 6. In the main, the regulations are repetitive of the statute. Their application turns on the definition of the term "subcontractor" and a functional separation between work that is being performed as a part of the construction and work which is not.

Although the application and interrelationship between various terms used in the regulations including "directly upon the site", "construction", "furnishing

9. See footnote 8, supra; see also Op. Sol. Lab. to Charles A. Horsky, June 8, 1956.

10. Op. Sol. Lab. to Commissioner, State Highway Department of New Jersey, Sept. 26, 1958.

11. Op. Sol. Lab. to Alex M. Barman, Jr., October 6, 1960; Op. Sol. Lab. to Charles A. Horsky, November 27, 1957; See also Op. Sol. Lab. No. DB–36, June 24, 1963.

of materials", and "subcontractors" are not altogether clear to us, we do not find that the position cited by the Solicitor in DB–22 is inconsistent with the regulations.

One of the most frequent approaches used by the Department of Labor in deciding whether a particular group of workmen is covered by the Davis-Bacon Act, is to distinguish between their employees as materialmen or subcontractors; the latter are specifically covered by the statute. In such instances, the Solicitor often cites cases involving suits on statutory bonds executed pursuant to the Heard Act, 28 Stat. 278, and its successor, the Miller Act, 40 U.S.C. § 270a et seq. This has been done because the Davis-Bacon Act at 40 U.S.C. § 276a–2 specifically gives the employee who has not received the statutory wage, an action on the bonds.

We have found none of such cases which deal specifically with the status of the employee of an independent trucking firm whose work is limited to the delivery of commercial building material to the site. However, the following statement from the opinion of the Supreme Court in Clifford F. MacEvoy Co. v. United States, 322 U.S. 102, 64 S.Ct. 890, 88 L.Ed. 1163 (1944) is often quoted:

> " * * * But under the more technical meaning, as established by usage in the building trades, a subcontractor is one who performs for and takes from the prime contractor a specific part of the labor or material requirements of the original contract, thus excluding ordinary laborers and materialmen."

Defendant relies on this language and argues that since the contracts required plaintiff to furnish all plant, materials and labor, for the completion of the work, Glover was plaintiff's subcontractor and his employees were therefore covered by the Davis-Bacon Act and the Eight-Hour Laws. But defendant concedes that neither the supplier's truck drivers nor the drivers employed by independent trucking firms under contract with the supplier, is covered by the statutes. If defendant's view is accepted without limitation, the drivers mentioned would be covered, as would all the employees of materialmen. Such a result would be clearly contrary to the intention of Congress.

In reviewing the opinions of the Solicitor of the Department of Labor, it is not altogether clear whether materialmen are excluded from statutory coverage because they are specifically excluded by the regulations or statute, or because they are not subcontractors who perform a specific portion of the work called for in the prime contract, or possibly because they do not work directly upon the site of the work. We assume that all of these approaches are closely related.

In this case we hold that Glover's employees were not covered by the labor statutes because of the nature of the function Glover performed, namely, the delivery of standard materials to the site—a function which is performed independently of the contract construction activities. We think this decision is a logical extension of the congressional intent to exclude employees of materialmen from the coverage of the Davis-Bacon Act.

Since we have decided that the truck drivers are exempt from the Davis-Bacon Act and accepted Glover's payrolls as a correct record of the hours worked, we find that there was no violation of the Eight-Hour Laws.

We emphasize that our decision is limited to the facts of this case and do not reach the contentions of the parties as to the other permutations of the Davis-Bacon Act. Cf. Communist Party of United States v. Subversive Activities Control Board, 367 U.S. 1, 81 S.Ct. 1357, 6 L.Ed.2d 625 (1961); Barr v. Matteo, 355 U.S. 171, 78 S.Ct. 204, 2 L.Ed.2d 179 (1957).

Plaintiff has conceded that there were some violations of the Eight-Hour Laws with respect to its own employees under contract 1955 and has failed to offer any evidence showing why it is entitled to a return of the $100 withheld under that contract.

It follows from what has been said above that plaintiff is entitled to recover and the judgment is entered for it in the sum of $9,314.46.

DAVIS, Judge (dissenting).

I do not disagree with the court that factual as well as legal issues are properly before us and that Glover's records of the hours worked by its drivers should be accepted. Nor do I differ with the other facts found by the court. I dissent, however, from the legal holding that Glover's drivers were not covered by the Davis-Bacon Act. The court follows opinion DB–22 of the Solicitor of Labor (which is admittedly very close) in preference to the Department's contrary opinion in this very case. I would put aside the administrative decisions, whether they be one way or the other. In this sector of its Davis-Bacon Act interpretations the Labor Department's varied rulings recall the Minotaur's labyrinth in the complexity of their turnings. Unlike Theseus, I have been unable to find the golden thread through the maze and must therefore escape onto the higher and easier ground of the statute itself. From that vantage post, I see these drivers as covered.

Glover should be treated as plaintiff's "subcontractor", within the meaning of the Davis-Bacon Act. That is what Glover is called in the agreement it made with plaintiff, and that agreement is tied, in almost every pertinent clause, to the prime contracts plaintiff had with the Federal Government. The material hauled by Glover belonged to plaintiff, and

was necessary for the plaintiff's work under the prime contracts. Glover was not a supplier or a materialman in any ordinary sense; it was carrying the material for plaintiff, under an arrangement initiated by and with plaintiff—not the suppliers. If plaintiff had used its own employees for this part of the project, their wages would be subject to the Act (provided, as I think, they were employed "directly upon the site of the work"); Glover merely substituted its men for plaintiff's in performing this aspect of the job.[1] Cf. Clifford F. MacEvoy Co. v. United States, 322 U.S. 102, 109, 64 S.Ct. 890 (1944). Moreover, Glover expressly agreed "to comply with all applicable Federal and State Labor Laws and Regulations and to pay all persons employed hereunder the rates of pay provided by the GENERAL CONTRACT and by such laws." The terms of the parties' own understanding should not be conclusive where they attempt to avoid coverage under the Davis-Bacon Act, but I would hold them to their agreement when they themselves concur, in that agreement, that the secondary employer is a "subcontractor" and his men are to be paid under the Act.[2]

Also, Glover's drivers were, in my view, employed "directly upon the site of the work." We need not decide whether drivers hired in like circumstances to haul material *to* a construction site are always under the Davis-Bacon Act; these men drove for a substantial time *on* Holloman Air Force Base which I regard as the minimal "site" under plaintiff's contracts.[3] Substantial work on the site,

---

1. The Labor Department's regulations declare that "the terms 'construction', 'prosecution', 'completion', or 'repair' mean all types of work done on a particular building or work at the site thereof, * * * in the construction or development of the project, including, without limitation, altering, remodeling, painting, and decorating, *the transporting of materials and supplies to or from the building or work by the employees of the construction contractor or construction subcontractor, * * *.*" 29 C.F.R. § 5.2(g) (emphasis added).

2. Under the Act and regulations, it is immaterial whether the drivers were technically "employees" of Glover or were "independent contractors." See 29 C.F.R. § 5.2(i).

3. The drivers spent at least 10% of their time on Holloman Air Force Base. Holloman was designated in the contracts as the place of performance. A special one-mile road, used by these drivers, was constructed, partially on the Base and partially on private property (which

even though it be much the minor part of the employee's total work, is enough for coverage. Cf. Walling v. Jacksonville Paper Co., 317 U.S. 564, 572, 63 S.Ct. 332, 87 L.Ed. 460 (1943); Mabee v. White Plains Publishing Co., 327 U.S. 178, 180–183, 66 S.Ct. 511, 90 L.Ed. 607 (1946); Crook v. Bryant, 265 F.2d 541, 543–544 (C.A. 4, 1959); Telephone Answering Service, Inc. v. Goldberg, 290 F.2d 529, 532 (C.A. 1, 1961).

The court agrees that, if the drivers were covered by the Davis-Bacon Act, there were a number of instances in which plaintiff (through Glover) failed to pay the wages called for by that legislation and the Eight Hour Law. I would remand to the trial commissioner for determination of such amounts.

could be said, for this purpose, to be part of the Base). The contracts specifically contemplated use by plaintiff and its subcontractors of parts of the Base, including roadways. In addition, the "Scope of Work" clause declared that "the work to be performed under this contract consists of furnishing all plant, materials, equipment, supplies, labor, and transportation * * *."