## TELESCOPE FOLDING FURNITURE CO., Inc., v. UNITED STATES.
### No. 44337.

Court of Claims.
March 4, 1940.

Malcolm Johnson, of New York City (Ewing Everett, of New York City, and O. H. Chmillon and Miller & Chevalier, all of Washington, D. C., on the brief), for plaintiff.

Guy Patten, of Washington, D. C., and Samuel O. Clark, Jr., Asst. Atty. Gen. (Robert N. Anderson and Fred K. Dyar, Sp. Assts. to Atty. Gen., on the brief), for defendant.

Before WHALEY, Chief Justice, and GREEN, LITTLETON, WILLIAMS, and WHITAKER, Judges.

WHITAKER, Judge.

The plaintiff entered into a contract with the defendant to furnish a certain number of folding canvas cots "with unbleached (gray) duck" at $2.39 each. Article 1 of the contract contained this provision: "Prices set forth herein include any Federal tax heretofore imposed by the Congress which is applicable to the material purchased under this contract. If any sales tax, processing tax, adjustment charge, or other taxes or charges are imposed or changed by the Congress after the date set for the opening of the bid upon which this contract is based and made applicable directly upon the production, manufacture, or sale of the supplies covered by this contract, and are paid by the contractor on the articles or supplies herein contracted for, then the prices named in this contract will be increased or decreased accordingly, and any amount due the contractor as a result of such change will be charged to the Government and entered on vouchers (or invoices) as separate items." The invitation for bids contained practically the same provision.

The invitation for bids was dated July 13, 1933. The Agricultural Adjustment Act was passed on May 12, 1933, and under the proclamation of the Secretary of Agriculture the processing tax on articles processed from cotton became effective on August 1, 1933.

The plaintiff was uncertain whether or not to include in its bid the processing tax

es levied with respect to those component parts of the cots which had been processed from cotton, and accordingly it wrote the defendant's contracting officer, in part, as follows: "We would appreciate you advising us who to communicate with as to just how to figure our prices in bidding— whether to include the processing tax or not. We realize that the bid opens on the 28th of July and the cotton processing tax becomes effective August 1st."

The contracting officer on July 25, 1933, in reply, called plaintiff's attention to his notice to bidders of the same date. This notice to bidders reads as follows:

"1. Referring to the paragraph under the caption 'Federal Taxes,' appearing in each of the above mentioned invitations to Bid, and with particular reference to the item of 'processing tax' therein, such a tax having been imposed by Title 1, Section 9(a) of the Act approved May 12, 1933 (Public, No. 10, 73rd Congress), bidders are advised:

"(a) If a Federal processing tax is in *effect* at the time bids are opened, it will be presumed that the successful bidder included the tax in his bid and no amount in excess of that bid will be paid by the Government.

"(b) If a Federal processing tax becomes *effective* after bids are opened or after the contract is made, which tax must be paid by the vendor, the bid price may be increased accordingly in the manner stated in the 'Federal Taxes' paragraph in the Invitations to Bid, first above referred to.

"2. In conformity with the foregoing, and in order that bid prices may be correctly and justly judged, bidders under Invitation to Bid No. 669–34–5 for such of the items therein to which the Federal Processing Tax will apply, are advised to quote exclusive of such tax. Where bids have already been mailed and it is deemed necessary to change quotations, such changes should be submitted by telegraph to reach this office *before* the hour set for opening bids under this Invitation."

Relying thereon the bid submitted by the plaintiff did not include any amount on account of processing taxes levied with respect to the processing of the cotton from which were made the canvas and straps used in assembling the cots.

The defendant makes no point of the fact that the contract was executed after the processing taxes on cotton had become effective, in view of the terms of the notice to bidders issued by the contracting officer. It, however, defends upon the ground that no processing tax was levied on cots, and that the so-called "Federal Taxes" provision of the contract applies only to the articles furnished thereunder and not to the component parts thereof.

Whether or not the defendant may be technically correct in this position, it is manifest that the plaintiff and the defendant's representative understood that there was not to be included in its bid any amount on account of processing taxes on any of the material used in making the cots, but that such taxes would be added to the contract price under the "Federal Taxes" clause of the contract. When the plaintiff asked for instructions as to whether or not to include the processing tax in its bid, it, of course, knew that no processing tax was levied on the cots which it was to furnish, but it did know that such a tax was levied with respect to the canvas and straps to be used in constructing the cots. When, therefore, it inquired whether or not to include in its bid processing taxes it, of course, was inquiring about the processing tax with respect to the canvas and the straps. Likewise, when the contracting officer in reply sent plaintiff a copy of his notice to bidders dealing with processing taxes, he had reference to the processing taxes on the canvas and straps, because these were the only parts of the cots to which the processing tax applied. This notice to bidders specifically referred to plaintiff's proposed bid, and not only instructed bidders thereon to exclude processing taxes which became effective after the bids were opened, but also instructed them that if they had included such taxes in the bids already submitted to revise them so as to exclude them.

Plaintiff followed these instructions and did not include the processing tax, which it later paid to the processor, who, in turn, paid it to the defendant. Except for these instructions, the processing tax would have been included in plaintiff's bid and would have been paid by the defendant as part of the contract price.

In equity and good conscience, therefore, the plaintiff should recover the amount of the processing taxes paid by it, and the contract must be so construed by us, unless to do so would do violence to its plain and unequivocal meaning. We think it is susceptible of this construction.

The first sentence of the "Federal Taxes" provision states that the prices set forth

in the contract include any Federal taxes "applicable to the material purchased" thereunder which had been imposed by the Congress prior to the opening of bids. The next sentence provides that if certain taxes are thereafter levied by Congress and made applicable to "the production, manufacture or sale *of the supplies* covered by this contract, and are paid by the contractor *on the articles or supplies herein contracted for,*" such taxes are to be paid the contractor by the defendant. [Italics supplied.] While strictly speaking the "material purchased" and the "articles or supplies" were the cots, they include the cot's framework, the canvas covering and straps, and all its component parts.

If the plaintiff had contracted to furnish unassembled the framework for the cots and the canvas coverings and the straps, there could be no doubt that it would be entitled to recover for the processing tax paid on the covering and straps. The fact that it tacked the canvas covering and the straps to the framework and furnished the cot as an assembled article, we think makes no difference.

The contractor did not pay the tax on the cots, but it did pay it on a part of the cots, namely, the canvas and straps. The payment of the tax on a part of the article was a payment of the tax on the article itself.

The contractor did not pay the tax to the defendant itself, but it did pay it to him who, directly or indirectly, had paid it to the defendant. Such a payment comes within the "Federal Taxes" provision. Batavia Mills, Inc., v. United States, 85 Ct.Cl. 447. By that provision the defendant intended to reimburse the contractor for its increased costs on account of taxes which were levied by it after the contract was made, and which, therefore, the contractor had not taken into consideration in submitting its bid. Whether the contractor paid the taxes directly or indirectly, its costs were nevertheless increased, and it was this increased cost, brought about by the defendant's act, which the parties intended to take care of.

Neither Lash's Products Co. v. United States, 278 U.S. 175, 49 S.Ct. 100, 73 L.Ed. 251, nor United States v. Glenn L. Martin Company, 308 U.S. 62, 60 S.Ct. 32, 84 L. Ed. ——, 124 A.L.R. 1017, is here in point. The Lash's Products Company case did not involve the proper construction of a contract, which is the question here. Nor was the question here present in the Martin case. That case involved only the question of whether Social Security taxes came within the "Federal Taxes" provision.

It results that the plaintiff is entitled to recover of the defendant the sum of $6,006.67. It is so ordered.