**HEGEMAN–HARRIS & COMPANY, Inc.**
v.
**The UNITED STATES.**
No. 341–67.

United States Court of Claims.
April 16, 1971.

Harold F. Blasky, New York City, for plaintiff; Max E. Greenberg, New York City, attorney of record for plaintiff; Max E. Greenberg, Trayman, Harris, Cantor, Reiss & Blasky, New York City, of counsel.

James A. Pemberton, Jr., Washington, D. C., with whom was Asst. Atty. Gen. L. Patrick Gray, III, for defendant.

Before COWEN, Chief Judge, and LARAMORE, DURFEE, DAVIS, COLLINS, SKELTON and NICHOLS, Judges.

NICHOLS, Judge.

This case is before us on cross motions for summary judgment. We conclude that the plaintiff is entitled to recover on part of the claim, in an amount to be determined in a Rule 131(c) proceeding.

Plaintiff was the successful bidder on a fixed-price contract for the construction of a United States courthouse and Federal office building in Albuquerque, New Mexico. The contract, designated by the General Services Administration (GSA) as No. GS–08B–3566, was awarded on February 8, 1963, and had a fixed-price of $6,368,000. Included in its provisions was the following:

1–9 FEDERAL, STATE AND LOCAL TAXES

\*   \*   \*   \*   \*   \*

(c) (1) If the Contractor is required to pay or bear the burden (i) of any tax or duty, which either was not to be included in the contract price \* \* \* or was specifically excluded from the contract price by a provision of this contract; or (ii) of an increase in rate of any tax or duty; whether or not such tax or duty was excluded from the contract price; or of any interest or penalty thereon, the contract price shall be correspondingly increased: Provided, that the Contractor warrants in writing that no amount for such tax, duty or rate increase was included in the contract price as a contingency reserve or otherwise: *And provided further*, That liability for such tax, duty, rate increase, interest or penalty was not incurred through the fault or negligence of the Contractor or its failure to follow instructions of the Contracting Officer.

\*   \*   \*   \*   \*   \*

(4) Nothing in this paragraph (c) shall be applicable to social security taxes; net income taxes; excess profit taxes; capital stock taxes; unemployment compensation taxes; or any State and local taxes, except those levied on or measured by the contract or sales price of the services or completed supplies furnished under this contract, including gross income taxes, gross receipts taxes, sales and use taxes, excise taxes, or franchise or occupation taxes measured by sales or receipts from sales.

Subsequent to the award of the contract to Hegeman-Harris, the State of New Mexico increased the rate of its gross receipts tax from 1% to 1½% and the rate of the sales and use tax from 2% to 3%, both increases to be effective on April 1, 1963. The result of this tax increase was some additional tax liability for plaintiff and its subcontractors which had not existed at the time the contract was awarded and which plaintiff had not included in its bid price. There was the large amount of subcontracting usual with a major construction contract. Plaintiff invoked the escalation of para. 1–9(c)(1), *supra,* and applied to the contracting officer, under the standard disputes clause, for an adjustment to the price. Plaintiff duly warranted that no amount of the tax increase had been included in the contract price whether as a contingency or otherwise. Defendant has agreed that the increased liability has not resulted from any fault or negligence

of plaintiff or its failure to follow instructions of the contracting officer. The contracting officer determined that plaintiff was entitled to an adjustment in the amount of $31,524.75, which represented only the increased taxes imposed directly on plaintiff as prime contractor and did not include any increased taxes on the subcontractors, whether or not passed on to plaintiff in any manner. The reason for denial in the case of the subcontractors was the contracting officer's reliance on an unrelated decision of the Comptroller General, No. B–156701, 44 Comp.Gen. 816 (1965), interpreting the phrase, "levied on or measured by the contract or sales price of the services or completed supplies furnished under this contract", to prohibit any adjustment in the contract price as a result of State and local taxes levied on purchases of materials incorporated in the construction project.

After receiving the final decision of the contracting officer, plaintiff sought relief from the GSA Board of Contract Appeals (Board). In conjunction with this appeal the parties entered a stipulation, dated July 10, 1967, which included the following three paragraphs:

8. The following taxes were levied and the amounts indicated collected by the state of New Mexico:

| | Gross Recipts | Sales Tax | Total |
|---|---|---|---|
| (1) | $31,840.00 | $968.08 | $32,808.08 |
| (2) | 3,675.82 | 11,657.50 | 15,303.32 |
| (3) | 19,553.92 | 20,484.74 | 40.038.66 |
| (4) | 5,500.00 | 5,585.46 | 11,085.46 |
| (5) | 4,679.73 | . . . . . . . . . . | 4,679.73 |
| (6) | 5,147.70 | . . . . . . . . . . | 5,147.70 |
| (7) | 1,132.49 | . . . . . . . . . | 1,132.49 |
| (8) | 5,143.97 | . . . . . . . . . . | 5,143.97 |
| (9) | 5,658.37 | . . . . . . . . . . | 5,658.37 |
| (10) | 5,775.72 | . . . . . . . . . | 5,775.72 |
| | $88,107.72 | $38,665.78 | $126,773.50 |

9. All of the taxes listed, except those on the first line totaling the sum of $32,808.08 are taxes paid by appellant's subcontractors.

10. Appellant's subcontractors each have a provision in its subcontract tying them to the provisions of the principal contract.

The stipulation was signed by the attorney for GSA and by the president of Hegeman-Harris, and according to defendant was submitted to the Board by plaintiff in response to the motion made by the GSA counsel to dismiss for lack of jurisdiction. Apparently the parties urged and the Board determined that there was no material dispute of fact but the only question was one of law, namely: that of liability for the tax increase. Defendant admits it told the Board it lacked jurisdiction and should dismiss on that ground. Defendant further admits, citing Nager Electric Co. v. United States, 396 F.2d 977, 184 Ct.Cl. 390 (1968), that it has thereby waived its right to have the case decided under the disputes clause of the contract. The Board actually dismissed the appeal, not because of the supposed lack of jurisdiction, but because any decision it rendered on a purely legal issue would not be accorded finality by the courts and would be "merely academic, and thus without any significance from a practical standpoint." See 41 U.S.C. § 322; W. H. Edwards Eng. Corp. v. United States, 161 Ct.Cl. 322, 328 (1963). (We do not ourselves subscribe to the quoted phrase for we find interpretations by tribunals having expertise to be helpful even if not compelling.) Hegeman-Harris then brought suit in this court and promptly moved for summary judgment.

The Government responded with its own motion for summary judgment and in addition asked to be relieved from the quoted paragraphs of the stipulation. The essential argument made is that the stipulation is contradicted by other evidence which is also in the record. As to paragraph 10 of the stipulation, defendant says that 37 of the subcontracts involved were in the Board record. The contention is that these documents are themselves the best evidence of what they contain and that an examination of these reveals that para. 10 is an erroneous conclusion of law. The Government also argues that the Board's refusal to decide the case renders the administra-

tive proceeding a nullity, stripping the stipulation of any binding effect it might otherwise have.

■ It is true, as plaintiff's counsel points out, "that both public and judicial policy look with favor on stipulations designed to simplify and shorten litigation to the benefit of all parties." *See* Kramer v. United States, 406 F.2d 1363, 186 Ct.Cl. 684 (1969). And we adhere to what we said in John McShain, Inc. v. United States, 375 F.2d 829, 831, 179 Ct.Cl. 632, 635 (1967), that "A stipulation is a judicial admission binding on the parties making it absent special considerations." We think this case presents special considerations. Where the subcontracts themselves are part of the record, any stipulation as to their legal effect is not operative. Were we to rule otherwise, this court would be in the position of allowing counsel to stipulate the law, a function which, in the context of a judicial proceeding, is the province of judges. Not only has this court refused to be bound by a stipulation on an issue of law, Sac & Fox Tribes et al. v. United States, 315 F.2d 896, 161 Ct.Cl. 189 (1963), but the United States Supreme Court has made similar pronouncements, Swift & Co. v. Hocking Valley Ry., 243 U.S. 281, 37 S.Ct. 287, 61 L.Ed. 722 (1917). We also think it is contrary to the Attorney General's authority to manage defendant's litigation in this court, that he should be bound by a stipulation made by another counsel, in a proceeding before another tribunal, which did not approve or adopt the stipulation and made no fact findings at all. "A court may relieve a party of his stipulation if necessary to prevent an injustice, particularly where facts contrary to the stipulation are established by the evidence." H. B. Zachry Co. v. United States, 344 F.2d 352, 357, 170 Ct.Cl. 115, 123 (1965). In this case we have no record to review under Wunderlich Act standards and are privileged to make our own findings. *See* Utah Constr. & Mining Co. v. United States, 384 U.S. 394, 86 S.Ct. 1545, 16 L.Ed.2d 642 (1966). It is quite likely that the Board itself, had it heard this case, would have rejected the stipulation. We therefore do not hold the parties to the contested portions of the stipulation of July 10, 1967.

In the instant proceeding, the parties filed a "supplemental" stipulation on September 14, 1970, for the announced purpose of:

> * * * demonstrating to the Court that the case is now in a posture for submission to the Court on the parties' pending dispositive motions; that in the event the Court determines that plaintiff is entitled to judgment on the merits the Court will be in a position to either award plaintiff such judgment on the basis of the stipulation submitted herewith or, in the event it finds that areas of disagreement do exist and require determination, to submit such areas of disagreement to a Trial Commissioner of this Court for ultimate determination in a proceeding pursuant to Rule 131(c).

This "supplemental" stipulation appears to be little more than an agreement to disagree. While both parties were careful to preserve their respective positions vis-a-vis the earlier stipulation, we note the following: (1) The plaintiff has reduced its claim to a net $67,710.77. This is a recognition of the $31,524.75 already allowed by the contracting officer, which is uncontested by the defendant, plus the fact that a portion of the prior amount claimed represented "surcharges for overhead and profit", which the parties now agree that plaintiff is not entitled to recover; (2) of the net amount, plaintiff claims $66,427.44 for increased State taxes imposed upon its subcontractors and which plaintiff has divided into the following categories:

> Category I—Comprising subcontractors whose subcontracts were entered into after the April 1, 1963 date of tax increase or who executed subcontracts which by express exclusion of the taxes from the subcontract price imposed a direct obligation on plain-

tiff to pay the taxes directly to the State of New Mexico.

| Gross Receipts Tax | Sales Tax | Total |
|---|---|---|
| $3,675.82 | $11,627.50 | $15,303.32 |

Category II—Comprising subcontractors whose subcontracts were negotiated or awarded prior to the April 1, 1963, date of tax increase:

| Gross Receipts Tax | Sales Tax | Total |
|---|---|---|
| $19,553.92 | $20,484.74 | $40,038.66 |

Category III—Comprising subcontractors whose tax burden was increased because of second-tier subcontracts:

| Gross Receipts Tax | Sales Tax | Total |
|---|---|---|
| $5,500.00 | $5,585.46 | $11,085.46 |

Defendant does not accept the above figures. Paragraph 9 of the supplemental stipulation contains the following:

All of plaintiff's subcontracts contain language which plaintiff contends ties plaintiff's subcontractors to the provisions of the principal contract. A typical purchase order form subcontract provides that the subcontractor will:

"furnish and deliver by truck to the jobsite, in strict accordance with all terms, provisions, and conditions of a contract between the General Services Administration * * * and Hegeman-Harris Company, Inc. * * * all electrical operating materials and equipment as required under the Principal Contract Including Without Limitation * * *."

A typical long form subcontract provides:

"*First:* the *Subcontractor* agrees to furnish all plant, labor, materials, appliances, equipment, supervision, and all other facilities and things necessary to complete all work specified by the subdivisions and/or items of work described in the principal contract between the *Contractor* and the *Owner* and scheduled herein below and agrees to perform all of said work by qualified, careful, and efficient mechanics in the best and most workmanlike manner and in exact accordance with the terms, provisions and conditions of said principal contract, and the *contractor* hereby sublets said work to the *Subcontractor* on the terms and conditions hereinafter set forth: * * *."

Five of plaintiff's 37 subcontracts make specific provision for state tax increases. Defendant asserts that this indicates that the language quoted above did not make plaintiff liable to its subcontractors for a tax increase enacted after the effective dates of the subcontracts. Plaintiff asserts that no such significances attaches to the language used in the five subcontracts, the sole issue being whether the language quoted above obligates the Government to reimburse plaintiff for increased taxes paid by plaintiff and its subcontractors.

Counsel for the Government asserts that recovery is available only for those taxes plaintiff actually pays or is "contractually obligated" to pay. The contention is that there is no contractual obligation here because the stipulated purchase order and long form clauses of the subcontracts do not purport to incorporate by reference the escalation clause of the prime. We agree that the stipulated language standing alone does not do this. Indeed, this kind of language seems on its face only to require the subcontractor to perform in accordance with the specifications set forth in the prime contract and nothing more, as was held in United States v. Fryd Constr. Corp., 423 F.2d 980 (5th Cir. 1970), cert. denied, United States v. American Fire & Casualty Co., 400 U.S. 820, 91 S.Ct. 56, 27 L.Ed.2d 48, with respect to a subcontractor not being barred by a prime contract disputes clause from bringing a Miller Act suit. That is not to say that an examination of the entire subcontract, or evidence aliunde of a course of dealing between the parties would not convince us otherwise. The stipulation does provide that five of the subcontracts make specific provisions for State tax increases. But we do not find this bit of information at all helpful to us here, because, like

para. 10 of the original stipulation, it is merely a conclusion of law agreed to by the parties and by which we are not bound. The language used should have been set forth in the stipulation. In any event, the parties will have an opportunity to demonstrate what they have on this point to our trial commissioner on remand, because we find the stipulated facts presented to us wholly inadequate for a final disposition of this case on the basis of the subcontract language quoted.

We will determine here only (1) whether, apart from the stipulated language of the subcontracts, plaintiff has been "required to pay or bear the burden" of the tax increases imposed upon its subcontractors, and (2) whether the taxes involved were "levied on or measured by the contract or sales price of the services or completed supplies furnished under this contract." This question in the context of a construction contract has not been presented to us before.

■ We will address ourselves first to the "bear the burden" issue. The cardinal rule of contract interpretation is to carry out the intent of the parties. It is obvious that the use of the clause in question shows that both sides contemplated that the contractor would be reimbursed by the Government for certain tax increases enacted after the fixing of the contract price. Counsel for defendant, as we pointed out, *supra*, would limit plaintiff's claim to those tax increases it paid directly or those it was obligated by specific provisions of the subcontracts to reimburse to the subcontractors. In support of this contention, defense counsel refers us to United States v. Cowden Mfg. Co., 312 U.S. 34, 61 S.Ct. 411, 85 L.Ed. 497 (1941), a case involving a Federal taxes clause which provided reimbursement by the Government for certain taxes imposed "after the date set for the opening of the bid * * * *and are paid by the contractor.*" (Emphasis supplied.) The court in denying recovery for taxes paid by the subcontractors, said at p. 37, 61 S.Ct. at p. 413:

* * *. For while in a sense, perhaps, respondent "paid" these processing taxes, it is more accurate to say that they were "paid" by the subcontractors who merely shifted their burden to respondent as a separate item of the contract price. * * *.

But the contract term in *Cowden* was obviously more limiting than the one at issue here. If the intent of the drafters of our clause had been to restrict reimbursement to the limits of *Cowden*, it would have been foolish to have used such expansive language. Indeed, they chose to add the words "or bear the burden", which seems precisely to have been intended to include that which was excluded in *Cowden*. Viewed in this context, the *Cowden* case supports the plaintiff's position and not that of defendant. We think that by use of the instant clause the Government intended to reimburse the contractor for any tax increases imposed on the contractor which were not included in the contract price, whether they were paid directly or whether the burden therefor was shifted to the plaintiff by the subcontractors through an increase in their prices. This does not mean that plaintiff can recover all it says it is entitled to. The question remains, when did it bear the burden?

■ The answer to this follows logically—those subcontracts let before April 1, 1963, would not have included a then nonexistent tax increase in the price, and barring an escalation clause therein or some other express contract commitment, plaintiff would be under no obligation to make reimbursement. It would not have to "bear the burden". As to these pre-tax increase subcontracts, plaintiff has argued that its right to recover is "derivative of the right of the subcontractor or supplier to recover." But these subcontractors, having no contract escalation, have no right to recover. Here plaintiff stands not in the shoes of a subrogee but those of a volunteer, if it chooses to make reimbursement without an obligation to do so. Plaintiff's reliance on a moral obliga-

tion is insufficient in law. Without a legal liability to the subcontractor, the prime contractor may not sue here in its behalf. J. L. Simmons Co., v. United States, 304 F.2d 886, 158 Ct.Cl. 393 (1962).

■ However, as to the post-tax increase subcontracts, those let after April 1, 1963, it is only logical to assume that the amount of the increase was included in the contract price by the subcontractor, thereby shifting the burden to the plaintiff. If the words "or bear the burden" are to have any meaning at all they must include the tax increases involved here, for plaintiff is as much "contractually obligated" to pay them, through the medium of the increased price, as it would have been by a specific clause in the subcontracts. See Telescope Folding Furniture Co. v. United States, 31 F.Supp. 780, 90 Ct.Cl. 635 (1940).

We are not told why the plaintiff has distinguished "subcontractors whose tax burden was increased because of second-tier subcontracts" in the supplemental stipulation. Neither party has advanced a theory of what legal consequences, if any, should flow from this distinction. Although we do not think it is relevant, the parties are free to brief the issue and present it to our trial commissioner on remand.

■ The defendant contends, and rightly, that it is not enough for recovery that plaintiff was required to pay or bear the burden of the tax increases, but that the taxes must have been "levied on or measured by the contract or sales price of the services or completed supplies furnished under this contract." It is the Government's position that this phrase excludes a price increase as a result of State and local taxes levied on purchases of materials *incorporated* into the construction project. According to the Government's reasoning, the only "*completed supply*" to which this contract could apply would be the completed building itself. Since no sales and use taxes are ever levied on a completed building, as plaintiff says, as defendant does not deny, and as we may take

judicial notice is so, the contention really is that the contractor can recover only for the increased gross receipts tax paid. Thus, the Government does not attack the $31,524.75 previously awarded by the contracting officer, but it would deny any further recovery. In support of this contention, counsel for the Government again refers to United States v. Cowden Mfg. Co., *supra,* which involved a supply contract for the furnishing of mechanics' suits. The tax clause in that case provided for reimbursement of those taxes levied "directly upon the production, manufacture, or sale of the supplies covered by this contract." The court said at pp. 36–37, 61 S.Ct. at p. 413:

> * * *. The supplies "covered by this contract" are the mechanics' suits, the completed articles furnished to the United States. Since the clause further provides in exact language that the tax must be "directly" applicable, we cannot agree that a tax on the cloth, thread, and labels is a tax on the "supplies covered by this contract." * * *

The defendant does not contend that *Cowden* is controlling, but urges that the rationale of that case demonstrates the reasonableness of its position and the unreasonableness of the contractor's. We do not think the *Cowden* case is helpful on this issue any more than it was on the other. Not only was the contractual language different from that used here, but the case arose in the context of a supply contract, not a construction contract. For reasons set forth, *infra,* we think this is a material distinction.

■ The defendant has also referred us to the same ruling of the Comptroller General relied on by the contracting officer, No. B–156701, 44 Comp.Gen. 816 (1965). That case, although directly in point, did not analyze the tax clause but merely concluded that "Under this clause the contractor would not be entitled to a price increase as a result of State and local taxes levied on purchases of materials incorporated in the construction project, * * *" In any event, "the

action of the comptroller is not conclusive upon this court in determining the rights of the parties." Eaton, Brown & Simpson, Inc. v. United States, 62 Ct. Cl. 668, 685, cert. denied, 274 U.S. 746, 47 S.Ct. 658, 71 L.Ed. 1327 (1926).

■ We were recently faced with the problem of deciding whether a social security tax increase qualified a contractor for reimbursement under a contract clause which provided for a price increase "with respect to any [increased] Federal excise tax or duty on the transactions or property covered by this contract." Morrison-Knudsen Co. v. United States, 427 F.2d 1181, 192 Ct.Cl. 410 (1970). The contractor there, as here, was required to warrant that no amount of the newly imposed taxes "was included in the contract price as a contingency reserve or otherwise." We said, 427 F. 2d 1183–1184, 192 Ct.Cl. 415–416:

> For federal excise taxes, the self-evident purpose of the contract clause ̶ its general goal—is to make sure that bidders and contractors do not load their bids and prices with reserves or contingencies for the later imposition of, or increases in, such taxes. Bidders and contractors are to be encouraged to depend upon a price adjustment if they subsequently find themselves forced to pay higher taxes, rather than to seek to protect themselves in advance by raising their prices to cover the mere possibility of a tax increase. This general purpose seems to us to call for a liberal interpretation of the coverage of the clause, once it is clear, as here, that a federal excise tax is involved. It would deter, rather than advance, the over-all aim of guarding against the unnecessary inflation of contingency reserves to give a niggardly, technical or too-finely-reasoned interpretation to the words "transactions or property covered by this contract." * * *

We think this contract policy of encouraging the contractor to rely on subsequent price adjustments in these situations applies with equal force to the in-stant case. We are impressed with plaintiff's account, with which defendant agrees, that the tax clause here was drafted for use in a supply contract and that it was simply incorporated into construction contracts "without any apparent administrative effort being made, as far as one knows, to adapt the tax clause to the practicalities of construction contracting." It is a proper technique of interpretation to put ourselves into the shoes of a "reasonable and prudent" construction contractor when we look at the words "completed supplies furnished under this contract", and consider how he would interpret it. Deloro Smelting & Refining Co. v. United States, 317 F.2d 382, 386, 161 Ct.Cl. 489, 495 (1963); Hol-Gar Mfg. Corp. v. United States, 351 F.2d 972, 975, 169 Ct.Cl. 384, 388 (1965). In the construction industry, a large portion, and sometimes even all of the actual work performed under a contract is done by subcontractors. The only "completed supply" furnished by the prime contractor is the finished building, whereas the fixtures, the glass, cement, etc., are generally all furnished by subcontractors. It is normally these latter items which are subject to sales and use taxes and it would not be inaccurate to refer to them as "completed supplies" as they are delivered to the construction project site. Thus a construction contractor, attempting to apply the contract language to his industry, would reasonably think it applied to his subcontracts. To hold otherwise here would mean that in a great many construction contracts, the clause would have little meaning and would simply be a trap for the unwary contractor, luring him to depend on escalation rather than making suitable provisions in his bid price.

We assume, but do not decide, that under a supply contract the clause might have the meaning defendant assigns to it. The same words may have different meanings when placed in different contexts. Our conclusion is that the language "levied on or measured by the con-

tract or sales price of the services or completed supplies furnished under this contract", when used in a construction contract, must have been intended to apply to the subcontractors as well as the prime.

The contract, if ambiguous, should bear the interpretation reasonably given by the party who did not draft it, here the plaintiff. Morrison-Knudsen Co. v. United States, *supra,* and cases cited therein; Peter Kiewit Sons' Co. v. United States, 109 Ct.Cl. 390, 418 (1947).

Defendant's alternative argument is that the words "completed supplies" be limited to certain end items incorporated into the building without substantial change. Defendant urges us to distinguish between a can of paint before it is applied to a wall, and a set of venetian blinds. But we think such distinctions are immaterial in a construction contract. Not only could making them require a Solomon-like wisdom, but to the contractor who uses these materials, one is as complete as the other. Once we have decided that the subcontractors are included in the coverage, no purpose is served by drawing further distinctions.

To summarize, we hold that plaintiff may recover those increased State taxes imposed on its subcontractors when plaintiff had to bear their burden, either by specific provisions of the subcontracts or by inclusion in the price of those subcontracts let after the April 1, 1963, tax increase. The words, "completed supplies" used in this contract clause include the materials furnished by the subcontractors for inclusion into the project.

The plaintiff is entitled to recover to the extent indicated, and to that extent its motion for summary judgment is granted, and the defendant's cross motion is denied. We remand the case to a trial commissioner of this court to determine the amount of liability in a proceeding under Rule 131(c) and in accordance with this opinion.