864 F.2d 149
 Unpublished Disposition
NOTICE: Federal Circuit Local Rule 47.8(b) states that opinions and orders which are designated as not citable as precedent shall not be employed or cited as precedent. This does not preclude assertion of issues of claim preclusion, issue preclusion, judicial estoppel, law of the case or the like based on a decision of the Court rendered in a nonprecedential opinion or order.
CENTEX CONSTRUCTION COMPANY, INC., Appellant,
v.
THE UNITED STATES, Appellee.
 No. 88-1289.
 United States Court of Appeals, Federal Circuit.
 Nov. 14, 1988.
 
 Before MARKEY, Chief Judge, SMITH and ARCHER, Circuit Judges.
 ARCHER, Circuit Judge.
 DECISION
 The decision of the Armed Services Board of Contract Appeals (ASBCA or Board), ASBCA No. 33279, affirming the contracting officer's final decision to deny an equitable price adjustment and time extension to Centex Construction Company, Inc. (Centex) is reversed and remanded.
 
 OPINION
 
 1
 The interpretation of a contract is a question of law to be decided by the court and an administrative interpretation of a contract is not binding on the court. Fortec Constructors v. United States, 760 F.2d 1288, 1291 (Fed.Cir.1985). Of significant importance in interpreting the language of a contract is the intent of the parties at the time the agreement was consummated. Firestone Tire & Rubber Co. v. United States, 444 F.2d 547, 551 (Ct.Cl.1971); Hegeman-Harris & Co. v. United States, 440 F.2d 1009, 1016 (Ct.Cl.1971); see also R.G. Robbins & Co. v. United States, 4 Cl.Ct. 91, 93 (1983).
 
 
 2
 The contract was silent concerning the temporary utilities--i.e., buggy walk lights and steam line between buildings 9473 and 9474--that the government has now required Centex to provide at its own expense. Although Centex was "responsible for the utilities of any buildings transferred to the Corps of Engineers,"[1] neither the text of the contract nor the plans or specifications indicated that temporary lighting fixtures were required alongside the buggy walks or, if so, what design they should take. Moreover, the government's pre-bid estimate excluded any provision for temporary utilities of the type the government now claims were required by the contract. The evidence also indicates that Centex's bid similarly excluded costs for this work.
 
 
 3
 Although there was contractual silence as to temporary lighting and objective evidence that it was not contemplated, the Board nevertheless concluded that the contract contained an ambiguity which "[o]n its face ... was susceptible to two different interpretations." In hindsight this might be so, but it is apparent that the parties were in agreement in their interpretation at the time the contract was consummated and there was no ambiguity at that time.
 
 
 4
 In any event, the Board erred in holding that the ambiguity it found to be present was of the glaring or patent variety. The Board concluded that the requirement that "[a]ll buggy walks ... shall be operational at the end of each working day" was alone insufficient to place the ambiguity on the glaring end of the spectrum. This should have ended the Board's inquiry. It went on to find a patent ambiguity, however, because Centex, in the belief of the Board, would have become knowledgeable concerning the relationship between the overhanging lights and the buggy walks had Centex visited the construction site before bidding. In effect, the Board's holding would have required Centex to deduce from imputed knowledge, obtainable only outside the contract documents, coupled with its knowledge of the government's intent to use the plant at night, that the government may have intended that Centex provide temporary lighting. This is much too speculative and remote to be indicative of a glaring or patent ambiguity.
 
 
 5
 The decision of the Board is reversed and remanded for determination of the dollar amount of the equitable adjustment to which Centex is entitled.