**DESIGN AND PRODUCTION, INC., Plaintiff,**

v.

**UNITED STATES, Defendant.**

No. 553–84C.

United States Claims Court.

July 20, 1990.

ORDER

HORN, Judge.

This action is once again before the court, this time pursuant to the "Defendant's Motion for Reconsideration of Attorney's Fees Decision." The court has reviewed the defendant's Motion, the relevant legal authority, and considered the representations made by the parties during the May 9, 1990 status conference. The court remains unpersuaded by the arguments raised in the defendant's "Motion for Reconsideration of Attorney's Fees Decision" and finds that the original decision awarding attorney's fees and other costs in the amount of $56,451.50, issued by the court on April 20, 1990, is correct. Accordingly, the court, hereby, denies the "Defendant's Motion for Reconsideration of Attorney's Fees Decision."

## FACTS

The facts pertinent to the "Defendant's Motion For Reconsideration of Attorney's Fees Decision" in the above-captioned case are as follows.[1] On September 14, 1989, the court issued its Opinion on the merits in *Design And Production, Inc. v. United States*, 18 Cl.Ct. 168 (1989). On January 11, 1990, plaintiff filed "Plaintiff's Application for Costs and Expenses." On February 9, 1990, the defendant filed a "Motion to Stay Proceedings" for 30 days until March 11, 1990, which, because it was Sunday, would actually have ended on Monday, March 12, 1990.[2] The court did not act on the stay request, but both parties were informed that the court had already reviewed and researched the plaintiff's fee application and that it would continue to refine the draft of the Order it had prepared. Subsequently, on February 14, 1990, the defendant filed "Defendant's Response to Plaintiff's Application for an Award Under the Equal Access to Justice Act." Briefing on the plaintiff's fee application was completed on March 1, 1990, when the plaintiff filed its "Reply Brief."

On March 30, 1990, the parties submitted to the court for its review a proposed "Stipulation for Entry of Judgment", which contained the following language:

This stipulation is made for the purpose of enabling the court to enter judgment in the amount of $46,863.50 on plaintiff's application for attorney fees. However, in the event this stipulation is rejected in whole or in part by the court, it is agreed that the entire stipulation shall be void and have no legal affect whatsoever.

On April 20, 1990, the court issued an Order, after a thorough analysis of the plaintiff's fee request, as well as of the defendant's brief in response, and awarded $56,451.50 for attorney's fees and costs to the plaintiff. At no time prior to the issuance of the court's Order did either of the parties request a conference with the Judge, despite the fact that the Judge's law clerk informed the parties on several occasions that the Judge was continuing to work on finalizing an Order which would dispose of the plaintiff's attorney's fees and costs request.

On May 1, 1990, the court received "Defendant's Motion For Reconsideration of Attorney's Fees Decision." In the Motion for Reconsideration, the "Government asks the court to reconsider the propriety *rel non* of issuing the decision, not its factual or legal merit."

In an effort to provide both parties to this controversy an opportunity to address the issues, the court scheduled a status conference for May 9, 1990 to discuss the Motion for Reconsideration. To accommodate scheduling conflicts of the parties, the court rescheduled the status conference for May 10, 1990. In pertinent part, the Order arranging for the conference stated:

1. The plaintiff may respond to the "Defendant's Motion for Reconsideration of Attorney's Fees Decision," on or before May 9, 1990.

2. The court, hereby, schedules a conference in the above-captioned case to discuss defendant's motion on Thursday, May 10, 1990 at 10:00 a.m.

After receipt of the court's Order, counsel for the plaintiff informed the Judge's law clerk that he did not intend to file a written response to the "Defendant's Motion for Reconsideration of Attorney's Fees Decision." Moreover, at the May 9, 1990 status conference, plaintiff's counsel took no position on the defendant's Motion for Reconsideration and stated as follows:

Just briefly, Your Honor. As you've already alluded to, the amount at issue is

---

1. The facts pertaining to the merits of the case will not be presented here, but may be found in the earlier Opinion of the court on the merits, *Design And Production Inc. v. United States*, 18 Cl.Ct. 168 (1989), and the more recent Order of the court on attorney's fees, *Design And Production v. United States*, 20 Cl.Ct. 207 (1990).

2. The court notes that the facts regarding defendant's counsel's conversations with the Judge's law clerk, as presented by the defendant in its Motion for Reconsideration and the accompanying affidavit, are a selective presentation thereof, with statements taken out of context. Nonetheless, since none of these conversations took place with the court, it is not necessary to dissect them for the purposes of issuing this Order.

not great. And in view of that amount, my client has not authorized to do the kind of research and preparation that I think would be appropriate and necessary to respond to this motion for reconsideration.

Without doing that kind of research, I think it would be meaningless for me to state a position here with regard to the issues raised by that motion.

So, I think officially my position has to be that we do not take a position or at least we do not comment on the motion.[3]

## DISCUSSION

The basic organizing principle of the federal court system is found in the United States Constitution. Article III, Section 1 of the Constitution, which provides that "[t]he judicial power of the United States, shall be vested in one Supreme Court, and such inferior courts as the Congress may from time to time ordain and establish." Article III, Section 2 of the Constitution provides, in part:

The judicial Power shall extend to all Cases, in Law and Equity, arising under this Constitution, the Laws of the United States, and Treaties made, or which shall be made, under their Authority;—to all Cases affecting Ambassadors, other public Ministers and Consuls;—to all Cases of admiralty and maritime Jurisdiction;—to Controversies to which the United States shall be a Party....

■ The United States Claims Court is a court created under Article I of the Constitution, although, historically, its predecessor court, the United States Court of Claims, was created under Article III. Nonetheless, the responsibilities and powers of all federal courts are defined within the limitations set forth in the United States Constitution. Whether created pursuant to Article III and/or Article I of the Constitution, courts cannot assume authority beyond that conferred by the Constitution. This was recognized in the first case to hold an Act of Congress unconstitution-

al, *Marbury v. Madison*, 5 U.S. (1 Cranch) 137, 2 L.Ed. 60 (1803), in which the United States Supreme Court held invalid a statute that purported to grant original jurisdiction to the Supreme Court beyond that granted and defined by the Constitution. Similarly, when acting in a judicial capacity, federal judges in this country have followed the Anglo–American tradition of resolving disputes through the use of the adversary system. Within the limits set by the Constitution, the prosecution of actions in the United States Claims Court is conducted following the same tradition. In civil disputes it is generally up to the parties, not to the court, to initiate and prosecute the litigation, to investigate the pertinent facts, and to present proof and legal argument to the tribunal. J. Hazard, *Civil Procedure*, § 1.2 (3d ed. 1985); the court then must determine what are the relevant facts and the legal significance thereof. R. Posner, *The Federal Courts* 1 (1985). Otherwise stated, the court's function is to adjudicate the issues submitted to it by the parties, by moving the case along to a just and speedy resolution, based on the proof offered by the parties. J. Hazard, *Civil Procedure* § 1.2 (3d ed. 1985) (citation omitted).

■ The presentation to the court of a controversy involves two principles: the principle of party-presentation and the principle of party-prosecution. Party-presentation is the setting forth of both sides of the issue to the court's attention. Party-prosecution involves an effort on the part of the parties to move the case forward toward a just and speedy resolution. Uniting these two principles is the role of the parties and of the court working together. *Id.* The concept, ideally is that the presentation and prosecution should be by a party, with the court acting as an essential arbitrator. Adversary proceedings, however, do not necessarily follow an ideal course. If a case is proceeding smoothly, there is a strong common law tradition that the trial judge who conducts the trial should decide the true facts of the claims, based on the evidence

---

**3.** In fact, the amount included in the proposed stipulation is only $9,588.00 less than the award

made by the court.

presented by the parties, after weighing the defenses which are raised, all in accordance with an application of the appropriate law. In so doing, the court must exercise its power " 'to decide and pronounce a judgment and carry it into effect between persons and parties who bring a case before it for decision.' " Congressional Research Service, *Constitution Of The United States of America* 631 (J. Killian & L. Beck ed. 1982 & Supp.1988) (citing Justice Samuel Miller, *On the Constitution* 314 (New York 1891)). Judicial Power then is " 'the right to determine actual controversies arising between adverse litigants, duly instituted in courts of proper jurisdiction.' " *Id.* at 631–32 (citing *Muskrat v. United States*, 219 U.S. 346, 361, 31 S.Ct. 250, 255, 55 L.Ed. 246 (1911)).

It is well recognized that: "[t]he judicial system is the focal point of all conflicts and controversies of our society, and that the task of a judge, though not always a pleasant or a simple one, is to resolve those controversies in the fairest manner of which he or she is capable." *Zweibon v. Mitchell*, 516 F.2d 594, 650 (D.C.Cir.1975), *cert. denied*, 425 U.S. 944, 96 S.Ct. 1685, 48 L.Ed.2d 187 (1976). Courts exist to do justice, and are properly reluctant to lend their processes to enforcements of judgments which are unjust. Toward this end, as the defendant concedes, federal courts have ample jurisdiction to manage, try, and decide cases which are properly before them and over which they have jurisdiction.[4] *See* Rule 77.1 of the Rules of the United States Claims Court. The trend in seeking and doing justice "is toward a rational inquiry into truth, in which the tribunal considers everything 'logically probative of some matter requiring to be proved' " *Universal Camera Corp. v. N.L.R.B.*, 340 U.S. 474, 497, 71 S.Ct. 456, 469, 95 L.Ed. 456 (quoting Thayer, *A Preliminary Treatise On Evidence*, 539; *Funk v. United States*, 290 U.S. 371, 54 S.Ct. 212,

78 L.Ed. 369.) In addition, the trial court has a duty to reject stipulations which are demonstrably false. *Dillon, Read & Co. v. United States*, 875 F.2d 293, 300 (Fed.Cir. 1989) (citing *Universal Camera Corp. v. United States*, 340 U.S. 474, 497, 71 S.Ct. 456, 469, 95 L.Ed. 456 (1951); *Kaminer Constr. Corp. v. United States*, 488 F.2d 980, 988, 203 Ct.Cl. 182 (1982)). Additionally, a court may disregard a stipulation where the stipulation is found to be inadvertent, *Carnegie Steel Co. v. Cambria Iron Co.*, 185 U.S. 403, 444, 22 S.Ct. 698, 714, 46 L.Ed. 968 (1902), on issues of law, *Sac & Fox Tribe v. United States*, 315 F.2d 896, 900, 161 Ct.Cl. 189, 198 (1963), *cert. denied*, 375 U.S. 921, 84 S.Ct. 266, 11 L.Ed.2d 165 (1963), contrary to fact, or made without proper authority, *Hegeman–Harris & Co. v. United States*, 440 F.2d 1009, 194 Ct.Cl. 574 (1971). Otherwise stated, courts should issue judgments based on the evidence and should decline to lend their authority to incorrect results, even if it represents a way to more quickly reduce an overloaded docket. Faced with difficult issues on a controversial set of facts this court is reminded of Chief Justice Marshall's wisdom that:

> With whatever doubts, with whatever difficulties, a case may be attended, we must decide it, if it be brought before us. We have no more right to decline the exercise of jurisdiction which is given, then to usurp that which is not given. The one or the other would be treason to the constitution. Questions may occur which we would gladly avoid; but we cannot avoid them. All we can do is, to exercise our best judgment, and conscientiously to perform our duty.

*Cohens v. Virginia*, 19 U.S. (6 Wheat.) 264, 404, 5 L.Ed. 257 (1821).

■ The "Plaintiff's Application for Costs and Fees" was filed in the United States Claims Court on January 11, 1990

---

**4.** The court notes that there are disputes which have been recognized not to be prone to judicial resolution, including the following examples: federal courts will not entertain suits involving "political questions," *Powell v. McCormack*, 395 U.S. 486, 518–49, 89 S.Ct. 1944, 1962–78, 23 L.Ed.2d 491 (1969), and will refuse to entertain a suit by a person who lacks the necessary "standing" to complain of the defendant's alleged conduct. *See Flast v. Cohen*, 392 U.S. 83, 99–100, 88 S.Ct. 1942, 1952–53, 20 L.Ed.2d 947 (1968); *Baker v. Carr*, 369 U.S. 186, 204, 82 S.Ct. 691, 703, 7 L.Ed.2d 663 (1962).

and was properly before the court under the Equal Access to Justice Act, 28 U.S.C. § 2412 (1988) (hereinafter, EAJA). In addition, on February 14, 1990, well after the time that defendant claimed that the parties had entered into settlement negotiations, the government filed, "Defendant's Response to Plaintiff's Application for an Award Under the Equal Access to Justice Act", and on March 1, 1990, the plaintiff submitted its Reply Brief. On March 1, 1990, therefore, the issues were fully before the court for its consideration. Furthermore, the briefing materials, submitted to the court by the parties, did not indicate that settlement discussions were underway or that the plaintiff wished to withdraw its equal access to justice application from the court's consideration. In fact, no such application to withdraw has been filed with the court by the plaintiff.

The government, however, has argued in its Motion for Reconsideration that "[t]he purpose and effect of the parties' fully-executed stipulation was to withdraw plaintiff's EAJA application, and to entirely remove the fee dispute from the court's purview." We reject the notion that the mere filing of a proposed stipulation for entry of judgment with the court, specifically for the court's review, acts to deprive the court of the authority to act, or ends a litigant's cause of action.

Significantly, the terms of the proposed "Stipulation for Entry of Judgment" filed by the parties, by its very terms, requests the court's endorsement of the proposed stipulation. The "Stipulation for Entry of Judgement" states:

> For the purpose of resolving plaintiff's application for attorney fees, costs, and expenses, without any further judicial proceedings and without there being any adjudication of any issue of law or fact, and without constituting an admission of liability upon the part of plaintiff or defendant, and for no other purpose, the parties stipulate and agree as follows:
>
> 1. On June 7, 1983, the United States awarded contract number TA–83–SAC–02240 to Design & Production, Inc.
>
> 2. On October 26, 1984, Design & Production filed a complaint in the United States Claims Court.
>
> 3. Following a trial on the merits, on September 14, 1989, the court issued its decision, holding that Design & Production was entitled to an equitable adjustment in the amount of $728,189, together with interest, and denying defendant's counterclaim.
>
> 4. On October 13, 1989, the court entered judgment in favor of Design & Production in the amount of $728,189 plus interest.
>
> 5. On January 12, 1990, plaintiff filed its application for attorney fees, costs, and expenses, requesting $62,482.66 pursuant to the Equal Access to Justice Act.
>
> 6. This stipulation is made for the purpose of enabling the court to enter judgment in the amount of $46,863.50 on plaintiff's application for attorney's fees. However, in the event this stipulation is rejected in whole or in part by the court, it is agreed that the entire stipulation shall be void and of no legal effect whatsoever.

Paragraph 6 of the proposed stipulation clearly indicates that the court may "reject in whole or in part" the stipulation. The government, in its Motion for Reconsideration, alleges that paragraph 6 does not defeat its argument that the proposed stipulation removes the action from the court's purview. Defendant's reasoning appears to represent a post hoc rationale. We find that based upon the clear meaning of the words of the stipulation, the application for attorney's fees remained squarely before the court even after the proposed "Stipulation for Entry of Judgment" was submitted for the court's review. As presented, the stipulation required the court's endorsement before the case could be considered concluded. Alternatively, the court had the option of rejecting the stipulation and issuing a final order, based on the facts and law, as presented.

Regardless, however, of whether or not paragraph 6 was included in the proposed stipulation, submitted by the parties to the

court for its review, it is the position of the court that an application of the relevant law and facts of the instant case dictate an award different from the dollar amount negotiated by the parties and that, therefore, the court had to reject the proposed stipulation as presented by the parties. It has long been held that under normal circumstances, courts will give great weight to a proposed stipulation, but that "[i]n instances where a stipulation is inadvertent, contrary to law, contrary to fact, or made without proper authority this court may disregard the stipulation." *Kaminer Constr. Corp. v. United States*, 488 F.2d 980, 988, 203 Ct.Cl. 182, 197 (1973) (footnote and citations omitted). A court is not constrained to automatically accept or reject a proposed stipulation when proffered for review. Often, in the interest of expedition, courts readily accept such offers of assistance and move on to the next case. As it happens, in the instant case, at the time the proposed stipulation was offered to this court, the court had already completed its legal and factual analysis and had arrived at what it considers a proper dollar amount to award to the plaintiff and to its attorneys under the EAJA. Consequently, it could be argued that having already concluded that the EAJA award in the instant case should be $56,451.50, for the court to award any other amount would be inappropriate, and that any other award could be considered contrary to the law and the facts of the case as presented.

The United States Supreme Court has recently held that a court has "substantial discretion in fixing the amount of an EAJA award." *Immigration And Naturalization Service v. Jean*, — U.S. —, —, 110 S.Ct. 2316, 2320, 110 L.Ed.2d 134 (1990). In that case, the Supreme Court found that "[t]he Equal Access to Justice Act (EAJA) directs a court to award 'fees and other expenses' to private parties who prevail in litigation against the United States if, among other conditions, the position of the United States was not substantially justified." *Id.* at —, 110 S.Ct. at 2317 (footnote omitted). Justice Stevens delivered the Opinion for a unanimous Court and wrote:

While the parties' postures on individual matters may be more or less justified, the EAJA—like other fee-shifting statutes—favors treating a case as an inclusive whole rather than as atomized line-items.

*Id.* at —, 110 S.Ct. at 2320 (citations omitted).

The Court also held:

In EAJA cases, the Court first must determine if the applicant is a "prevailing party" by evaluating the degree of success obtained. If the Government then asserts an exception for substantial justification or for circumstances that render an award unjust, the court must make a second finding regarding these additional threshold conditions. As we held in *Hensley v. Eckerhart*, 461 U.S. 424 [103 S.Ct. 1933, 76 L.Ed.2d 40] (1983), the "prevailing party" requirement is a generous formulation that brings the plaintiff only across the statutory threshold. It remains for the district court to determine what fee is "reasonable." *Id.*, at 433 [103 S.Ct. at 1939]. Similarly, once a private litigant has met the multiple conditions for eligibility for EAJA fees, the district court's task of determining what fee is reasonable is essentially the same as that described in *Hensley*.

*Id.* (citations omitted).

The EAJA prescribes a similar flexibility. Section 2412(d)(1)(C) of Title 28 of the United States Code, empowers the district court, "in its discretion," to "reduce the amount to be awarded pursuant to this subsection, or deny an award, to the extent that the prevailing party during the course of the proceedings engaged in conduct which unduly and unreasonably protracted the final resolution of the matter in controversy." The Supreme Court, in rejecting the government's argument, held that "no award of fees is 'automatic.'" *Immigration and Naturalization Service*, — U.S. at —, 110 S.Ct. at 2321. The Court elaborated by stating that "[e]ligibility for fees is established upon meeting the four conditions set out by the statute, but a district court will always retain substantial discretion in fixing the amount of an EAJA

award." *Id.* Therefore, the Supreme Court has left little doubt that trial courts, which have been asked by the litigants to decide an issue concerning fees under an EAJA application, as is the case at bar, have substantial discretion in fixing the amount of an EAJA award.

In the case at bar, the proposed stipulation was not in accordance with the law and the facts as this court interpreted them, as demonstrated by the fact that the court arrived at a dollar amount different than that included in the proposed stipulation. Findings by the courts must be based on the best objective judgments of the law, and on combined objective and subjective judgments of the facts by the trial judge, after a careful review of the pleadings and evidence submitted in the case. In arriving at a final resolution, the trial judge must reach the best conclusion, which in his or her discretion will achieve a just and fair result. This court believes that the settlement figure, included in the proposed stipulation, must have been chosen by the parties as a compromise number, arrived at because both sides recognized possible weaknesses in their case. The court, however, did not have to compromise and was able to make an award based upon its best judgment, given the facts presented and based on the applicable law. In the case at bar, the proposed stipulation was contrary to the facts and the law, and this court, therefore, was obligated to reject the stipulation. *See Kaminer Constr. Corp. v. United States,* 488 F.2d 980, 988, 203 Ct.Cl. 182, 197 (1973).

Further support for the court's authority to award $56,451.50 to the plaintiff and its attorneys is also found in the Equal Access to Justice Act, 28 U.S.C. § 2412(d)(1)(A) (1988). In that Act, the courts are not only granted authority to, but, in fact, directed to, award to a prevailing party, other than the United States, fees and other costs in civil cases, other than tort actions. Specifically, the Equal Access to Justice Act provides:

> Except as otherwise specifically provided by statute, *a court shall* award to a prevailing party other than the United States fees and other expenses, in addition to any costs awarded pursuant to subsection (a), incurred by that party in any civil action (other than cases sounding in tort), including proceedings for judicial review of agency action, brought by or against the United States in any court having jurisdiction of that action, *unless the court finds* that the position of the United States was substantially justified or that special circumstances make an award unjust.

28 U.S.C. § 2412(d)(1)(A) (1988) (emphasis added).

It is clear that "the starting point in every case involving construction of a statute is the language itself." *Watt v. Alaska,* 451 U.S. 259, 265, 101 S.Ct. 1673, 1677, 68 L.Ed.2d 80 (1981), (quoting *Blue Chip Stamps v. Manor Drug Stores,* 421 U.S. 723, 756, 95 S.Ct. 1917, 1935, 44 L.Ed.2d 539 (1975) *reh'g denied* 423 U.S. 884, 96 S.Ct. 157, 46 L.Ed.2d 114 (1975)). Moreover it must be assumed that the ordinary meaning of that language accurately expresses the legislative purpose. *Park'N Fly v. Dollar Park and Fly, Inc.,* 469 U.S. 189, 194, 105 S.Ct. 658, 661, 83 L.Ed.2d 582 (1985); *see also United States v. Albertini,* 472 U.S. 675, 105 S.Ct. 2897, 86 L.Ed.2d 536 (1985). Otherwise stated, "it is well-recognized that the goal of statutory interpretation is to effectuate as nearly as possible the will of the legislature." *New Mexico v. United States,* 831 F.2d 265, 267 (Fed.Cir. 1987), (citing *HCSC–Laundry v. United States,* 450 U.S. 1, 6–8, 101 S.Ct. 836, 838–40, 67 L.Ed.2d 1 (1981); *Central Tablet Mfg. v. United States,* 417 U.S. 673, 689–91, 94 S.Ct. 2516, 2525–26, 41 L.Ed.2d 398 (1974); *United States v. American Trucking Association, Inc.,* 310 U.S. 534, 543–49, 60 S.Ct. 1059, 1063–67, 84 L.Ed. 1345 (1940)).

■ The key words chosen by the Congress when enacting the EAJA are "a court shall" and "unless the court finds". These are clear words of direction from the Congress to the courts indicating that it is a court's responsibility to determine whether or not and at what level attorney's fees are appropriate in an EAJA case. This

determination rests squarely within the discretion of the judicial officer, who must or "shall award" to a prevailing party fees and costs. In accordance with the statutory terms, it is the court's responsibility to independently assess the appropriateness and measure of attorney's fees to be awarded in a particular case, whether or not an amount is offered as representing the agreement of the parties in the form of a proposed stipulation.

In the case at bar, the court had before it a petition properly filed with the court. The issues presented in the petition had been fully briefed. Moreover, prior to the time the parties submitted their proposed stipulation for the court's review, the court already had completed its evaluation and analysis of the submissions filed by the parties and of the relevant facts and law. In fact, when the proposed stipulation was submitted for review, the court already had drafted an Order. Following the oral argument on May 9, 1990, the court decided to postpone issuing its decision in order to review a transcript of that proceeding prior to issuing its Order. While the court applauds the Attorney General's desire to manage its litigation, that authority does not negate the responsibility delegated to this court in the Equal Access to Justice Act, nor does it supersede this court's authority to review the proposed stipulation and to reject it in the event the court concludes that a different result is fair and just. This court takes its statutory obligations seriously and finds that, in the instant case, it would have been improper to adopt the proposed stipulation and to finalize an improper result. The court, in the best interests of justice, cannot endorse a set of numbers which does not represent its own best analysis of the applicable facts and law. In fact, the court felt when it issued its Order on April 23, 1990, and still does today, that to simply endorse a stipulation which is contrary to the court's independent and thorough analysis of the facts and law, would be to sidestep the very responsibilities which the Congress has delegated to the courts to carry out under the Constitution and under the EAJA.

In sum, in the instant case, the court, under 28 U.S.C. § 2412(d)(1)(A), is required by the Congress to review a fee and cost application and to grant fees and costs in the appropriate circumstances. The court has substantial discretion in the matter to determine the moving party's eligibility and whether or not certain circumstances exist to void a petitioner's eligibility. *See Immigration And Naturalization Service v. Jean*, —— U.S. ——, 110 S.Ct. 2316, 110 L.Ed.2d 134 (1990). The court possess the discretion, under the statute and case law, to grant or the deny fees and costs, as well as the discretion to determine the amount that is to be awarded. *Hensley v. Eckerhart*, 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983). Although courts should welcome cooperation between the parties and their attempts to resolve lawsuits, under the EAJA, the court must evaluate any proposed stipulation prior to endorsing or rejecting it.

Accordingly, the court rejects the proposed stipulation because it seeks to tie the court's hands as to whether or not it shall render a decision on the plaintiff's application for attorneys fees and costs and what the content of an Opinion or Order should be. *See Owens Corning Fiberglass Corporation v. United States*, 412 F.2d 1277, 1279, 188 Ct.Cl. 760, 762 (1969) (per curium). The court will not entertain a stipulation in which the court has determined, based on its own research and analysis, that the plaintiff is entitled to a larger award than that which the parties had included in their proposed stipulation. For it has long been held that " '[a] court may relieve a party of his stipulation if necessary to prevent an injustice, particularly where facts contrary to the stipulation are established by the evidence.' " *Hegeman–Harris Co. v. United States*, 440 F.2d at 1015, 194 Ct.Cl. at 581 (citing *H.B. Zachry Co. v. United States*, 344 F.2d 352, 357, 170 Ct.Cl. 115, 123 (1965)). The court must remain wholly free to issue such Opinions or Orders, and to do so as it deems proper.

Accordingly, defendant's "Motion for Reconsideration of Attorney's Fees Decision" is hereby DENIED. The plaintiff is entitled to $56,451.50 in fees and other costs,

as more fully explained in the court's order issued on April 20, 1990.